[No. F034274. Fifth Dist. Nov. 14, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
WANDA MARIE DONALDSON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part (1) of the Discussion.

COUNSEL

Rita L. Swenor, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Robert P. Whitlock and Ann P. Wathen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ARDAIZ, P. J.—

### ISSUES ON APPEAL

For over a century and a half, the judiciary has had the implied power to regulate the practice of law. (*Hustedt v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 329, 336-337, and fn. 5 [178 Cal.Rptr. 801, 636 P.2d 1139], citing *People v. Turner* (1850) 1 Cal. 143, 150.) The judiciary traditionally has deferred to legislative enactment of " 'a reasonable degree of regulation and control over the profession and practice of law . . . .' " (*Hustedt v. Workers'*

*Comp. Appeals Bd., supra,* 30 Cal.3d at pp. 337-338.) Congruent with that tradition, the Legislature has authorized the State Bar, with the Supreme Court's approval, to "formulate and enforce rules of professional conduct for all members of the bar . . . ." (Bus. & Prof. Code, § 6076; *Brydonjack v. State Bar* (1929) 208 Cal. 439, 442-446 [281 P. 1018, 66 A.L.R. 1507].) Pursuant to that authority, the State Bar has adopted a rule of professional conduct that prohibits, with few exceptions, a lawyer from acting as both advocate and witness. (Rules Prof. Conduct, rule 5-210.)

In the case at bar, the credibility of the key prosecution witness was the critical issue, as she was the only person who ever gave inculpatory information to law enforcement. Defendant's trial attorney did not object when the prosecutor took the stand to impeach the exculpatory testimony of that witness. Defendant's trial attorney then took the prosecutor on cross-examination and elicited evidence of her personal belief in the credibility of that witness at the time when she gave inculpatory information to law enforcement. In argument, without objection by defendant's trial attorney, the prosecutor expressed her personal belief, as both advocate and witness, in defendant's guilt.

The primary issue here is whether, with respect to the State Bar rule of professional conduct that generally prohibits a lawyer from acting as both advocate and witness, defendant's trial attorney rendered ineffective assistance of counsel. Before reaching that issue, we decide adversely to defendant the secondary issue of whether the record contains sufficient evidence of child endangerment. We find the failure of defendant's trial attorney to protect his client against abrogation of that rule of professional conduct undermines our confidence in the integrity and reliability of the trial. That due process concern persuades us that her claim of ineffective assistance of counsel is meritorious. On that ground, we reverse and remand for a new trial. Consequently, we need not address the other issues defendant raises.

### PROCEDURAL HISTORY

The Kern County District Attorney filed an information charging defendant Wanda Marie Donaldson with attempted murder and child endangerment of her two-month-old daughter. (Pen. Code, §§ 187, subd. (a), 273a, subd. (a), 664, subd. (a).) In argument, the prosecutor conceded insufficient evidence of attempted murder. The jury acquitted defendant of attempted murder and found her guilty of child endangerment.

## Factual History

### (1) Prosecution Evidence

Of several self-styled percipient witnesses to the incident that led to defendant's conviction of child endangerment of her two-month-old daughter (the baby), Bonnie Christopher was the only one who ever gave inculpatory information to law enforcement.

### (a) Testimony of the Key Prosecution Witness

On the day of the incident that led to defendant's arrest, Christopher told defendant's aunt that defendant tried to suffocate the baby with a pillow. She told a 911 dispatcher that defendant slapped Christopher's daughter Marie and tried to suffocate the baby. She told a deputy sheriff that she saw defendant try to suffocate the baby with a pillow, that she told defendant not to do that, and that defendant told her the baby was a bitch, the father was a bastard, and she did not want the baby any more. She told a TV news crew that she saw defendant with a pillow over the baby's face and that defendant hit Marie in the face when they tried to pull her off the baby.

At trial, Christopher testified that she did not personally observe the incident, that she just related things other people told her, and that her statements to defendant's aunt, the 911 operator, the deputy sheriff, and the TV news crew were lies. Several times she testified she did not see defendant hold a pillow over the baby's face. Once she testified she did see defendant do that.

Christopher thought of defendant as her friend at times, her close friend at times, and not her friend at all at times. She did not want to testify. She still cared for her and just wanted her to get help for her drinking.

### (b) Testimony of Other Witnesses

Upset and crying, Christopher told defendant's aunt that defendant tried to suffocate the baby with a pillow. She told her that defendant slapped Marie in the face after she and Marie tried to stop her. She told the 911 operator that defendant hit Marie and tried to suffocate the baby. She told defendant's aunt and the 911 operator that defendant was intoxicated.

Christopher told a deputy sheriff that she saw defendant holding a pillow over the baby's face with both hands. She said she told her not to do that. She said defendant told her the baby was a bitch, the father was a bastard,

and she did not want the baby any more. She never told the deputy sheriff she just repeated things other people told her.

A deputy sheriff who was a certified emergency medical technician observed the baby had shortness of breath and somewhat flushed cheeks. He handed her to an ambulance paramedic who arrived a few minutes later.

### (2)  Defense Evidence

After Marie and defendant's mother confronted defendant about her drinking, defendant angrily screamed that she was going to leave with the baby so she could live her life as she wished. Marie and defendant's sister held defendant down while defendant's brother-in-law took the baby out of her arms.

Defendant said she was upset with the baby's father and called him "sorry" and "worthless" for getting sent back to Mexico. She pushed Marie, who thought she was too drunk to care for the baby, but did not hit her or put a pillow over the baby's face.

An ambulance paramedic took charge of the baby. Once the ambulance was enroute to the hospital a few minutes later, he examined her and found no evidence of cyanosis or trauma.

### DISCUSSION

### (1)  Sufficiency of the Evidence*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### (2)  Trial Counsel's Performance with Regard to the Prosecutor's Testifying in Her Own Case

Defendant raises three ineffective assistance of counsel issues with regard to the prosecutor's testimony and argument. First, she argues her trial attorney should have objected to the prosecutor's testimony before she ever took the stand. Second, she argues her trial attorney did not competently cross-examine the prosecutor. Third, she argues her trial attorney should have objected to the prosecutor's argument in which she expressed her personal belief, as both advocate and witness, in defendant's guilt.

---

*See footnote, ante, page 916.

## (a) *The Record*

### (i) *The Key Prosecution Witness's Testimony About Her Conversation with the Prosecutor*

The first evidence of a conversation the prosecutor had with Bonnie Christopher just before the preliminary hearing came out during cross-examination of Christopher by defendant's trial attorney. Christopher testified the prosecutor told her she "could get arrested" if she were to fail to do something she characterized first as "get[ting] in there and say[ing] all this stuff," then as "say[ing] what I know what I said on the paper," then as testifying to the "statements, the truth that was on the policeman's report," and finally as "telling the truth." She testified she felt somewhat threatened by what the prosecutor told her. Nevertheless, she acknowledged she lied at the preliminary hearing when she testified defendant held the pillow above, not on, the baby's face.

On redirect examination, the prosecutor questioned Christopher about that conversation:

"Q. . . . And, when you came to court and you first approached me, do you remember where we sat and briefly talked before the preliminary hearing?

"A. Outside in the hallway.

"Q. Do you remember what you said about the prospect of having to testify against [defendant]?

"A. Yes, I said I didn't feel like—I don't want to testify against her.

"Q. Okay. And, do you remember what I told you when you told me that?

"A. No. All I remember is you told me if I didn't say, you know, that I could get arrested.

"Q. Did I tell you—did I remind you that as a witness you have an obligation to tell the truth?

"A. Yes.

"Q. And did I also say that you understand there are consequences that follow from not telling the truth? Do you remember me saying—

"A.  Yes.

"Q.  .  —exactly that?

"A.  Yes.

"Q.  I have never used the word you might be arrested. I said there were consequences for not telling the truth.

"[DEFENDANT'S TRIAL ATTORNEY]: Objection, counsel is testifying.

"THE COURT:  It is sustained.

"BY [THE PROSECUTOR]:

"Q.  Do you remember me telling you there were consequences that could follow if a witness does not tell the truth?

"A.  Yes.

"Q.  Did you understand that?

"A.  Yes.

"Q.  You heard me say that?

"A.  Yes.

"Q.  Did you in some way determine or believe that that was a threat?

"A.  Like I was thinking of being arrested, yes.

"Q.  So that's how you understood what I said?

"A.  Yes."

   (ii)  *The Prosecutor's Testimony About Her Conversation with the Key Prosecution Witness*

Immediately after an unreported sidebar conference, the prosecutor put on the record her intent to call herself as a witness to testify in "narrative fashion" as she understood "the court's ruling" permitted her to do. She stated another attorney from her office would "stand in" while she testified. The only objection defendant's trial attorney made was to the "narrative fashion" of her testimony. The trial court overruled that objection.

On direct examination, the prosecutor testified about her conversation with Christopher just before the preliminary hearing:

"I was assigned to handle this case prior to the preliminary hearing. I met Bonnie Christopher in connection with this case on the day of the preliminary hearing, May 17th, the second floor of the Municipal Court building, where she indicated to me that she did not want to testify against her friend [defendant]. And I indicated to her—it became apparent to me she was reluctant to testify. I told her that her obligation was to tell the truth. And I also told her that did she understand—or I just asked her, do you understand that there are consequences that follow if you don't tell the truth. And that was the extent of our conversation as far as that goes.

"I never told her that she had to testify consistently with the police reports. And I never told her that she would be arrested if she didn't testify consistently with the police reports. I told her to tell the truth."

On cross-examination, the prosecutor elaborated on her conversation with Christopher:

"Q.  [Defendant's Trial Attorney]: Did you talk about the police report with Mrs. Christopher? [¶] . . . [¶]

"A.  No. [¶] . . . [¶]

"Q.  What did she tell you?

"A.  She told me she didn't want to testify against her friend [defendant]. She felt bad for [defendant]. She didn't think she needed to be in jail. She thought that she needed help. That is what she told me."

The record shows that although the prosecutor's investigator was available she made no effort to involve him, either to witness her conversation with defendant or to talk with her himself:

"Q.  [Defendant's Trial Attorney]: Did you make any notes of your conversation with her?

"A.  No.

"Q.  Was anybody else privilege [sic] to that conversation?

"A. It was just she and I sitting next to each other on a bench. There were other members of Ms. Donaldson's family standing in the hallway waiting

for us to get a courtroom, but they were not sitting with us in the conversation. And then Ms. Christopher's daughter also approached me and spoke at length with me. And I had her speak to my investigator so that he could document what she had to say."

Defendant's trial attorney broadened the scope of his inquiry. He asked the prosecutor whether she believed in the police report. His first attempt did not bear fruit, as the trial court sustained the alternate prosecutor's objection, but his second attempt did, as the alternate prosecutor did not object:

"Q. [BY DEFENDANT'S TRIAL ATTORNEY]: And you believed that police report, didn't you?

"[ALTERNATE PROSECUTOR]: Objection, relevance.

"THE COURT: It is sustained. [¶] . . . [¶]

"Q. Did you read her the police report?

"A. No.

"Q. Okay. So she hadn't read the police report yet?

"A. I have no idea whether she read it or not.

"Q. You didn't give it to her?

"A. I don't do that, no. [¶] . . . [¶]

"Q. Well, what you believed was you had an authentic police report and a witness that was suddenly waivering [sic] on you. Isn't that true?

"A. No.

"Q. Did you disbelieve the police report?

"A. No.

"Q. You believed the police report?

"A. Yes."

Continuing to cross-examine the prosecutor, defendant's trial attorney again broadened his inquiry. In the absence of an objection by the alternate

prosecutor, he elicited the prosecutor's personal opinion about the credibility of Christopher's statements to the police:

"Q. . . . A few moments ago you testified that it didn't occur to you that maybe the police reports were false because Bonnie Christopher had said false things to the police to begin with. And that now outside—but then outside the hall of the preliminary hearing examination she didn't want to get up and testify to that because it was, it was untrue. You have already said that did not occur to you. Correct?

"A. That's correct.

"Q. Okay. So operating under that assumption, you made statements to her about—you made a statement to her about there are consequences if you don't tell the truth. But it never occurred to you at that time when you said it [sic] maybe she lied the first place to the police and maybe she was afraid of having to do the same thing on the stand.

"A. I didn't believe then and I don't believe now that Bonnie Christopher lied to the police."

By the time defendant's trial attorney had finished his cross-examination of the prosecutor, he had elicited evidence of her personal belief in the credibility of the only percipient witness who ever gave inculpatory information to law enforcement.

*(iii) The Prosecutor's Argument About Her Own Testimony and About Her Personal Belief in Defendant's Guilt*

Like defendant's trial attorney's cross-examination of the prosecutor, the final moments of the prosecutor's closing argument exposed the dilemma of advocate as witness:

"I said it on the stand, but now I will say it to you as arguing this case, I believe, based on the same evidence that is before you in this case, that this woman placed that pillow over her baby's head on April 30th. She is guilty of felony child endangerment. And I am asking you to return a verdict of guilty of felony child endangerment. Thank you."

Defendant's trial attorney did not object to the prosecutor's expression of her personal belief, as both advocate and witness, in defendant's guilt.

## (b) *The Law*

### (i) *The Prosecutor as a Witness in Her Own Case*

Pursuant to the judiciary's historic deference to reasonable legislative control of the practice of law, the State Bar has adopted a rule of professional conduct that prohibits, with few exceptions, a lawyer from acting as both advocate and witness (Rules Prof. Conduct, rule 5-210 (rule 5-210)):

"A member shall not act as an advocate before a jury which will hear testimony from the member unless:

"(A) The testimony relates to an uncontested matter; or

"(B) The testimony relates to the nature and value of legal services rendered in the case; or

"(C) The member has the informed, written consent of the client. If the member represents the People or a governmental entity, the consent shall be obtained from the head of the office or a designee of the head of the office by which the member is employed and shall be consistent with principles of recusal." (Rule 5-210.)

One of the American Bar Association Model Rules of Professional Conduct (Model Rules) likewise prohibits that practice and permits only a small number of exceptions (ABA Model Rules Prof. Conduct (4th ed. 1999), rule 3.7(a) (ABA rule 3.7(a)):

"A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

"(1) the testimony relates to an uncontested issue;

"(2) the testimony relates to the nature and value of legal services rendered in the case; or

"(3) disqualification of the lawyer would work substantial hardship on the client."

The American Bar Association Model Code of Professional Responsibility, which as predecessor to the Model Rules served as the national standard of professional conduct from 1969 to 1983, similarly tightly circumscribed the practice of a lawyer's acting as both advocate and witness (former ABA Model Code Prof. Responsibility, EC 5-9): "Occasionally a lawyer is called

upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."

Although California has not adopted the Model Rules, a State Bar rule of professional conduct expressly permits consideration of ethical rules other jurisdictions and bar associations adopt. (Rules Prof. Conduct, rule 1-100(A); *General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164, 1190, fn. 6 [32 Cal.Rptr.2d 1, 876 P.2d 487]; *Cho v. Superior Court* (1995) 39 Cal.App.4th 113, 121, fn. 2 [45 Cal.Rptr.2d 863].) Especially where there is no conflict with the public policy of California, the Model Rules serve as a collateral source for guidance on proper professional conduct in California. (*State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 655-656 [82 Cal.Rptr.2d 799].)

The foundations of the prohibition against a lawyer's acting as both advocate and witness lie in due process (ABA rule 3.7(a), Legal Background): "The prohibition against a lawyer serving as advocate and testifying as a witness in the same matter is essentially aimed at eliminating confusion over the lawyer's role. This confusion could prejudice one or more of the parties or call into question the impartiality of the judicial process itself. As an advocate, the lawyer's task is to present the client's case and to test the evidence and arguments put forth by the opposing side. A witness, however, provides sworn testimony concerning facts about which he or she has personal knowledge or expertise. The very fact of a lawyer taking on both roles will affect the way in which a jury evaluates the lawyer's testimony, the lawyer's advocacy, and the fairness of the proceedings themselves."

The prohibition against a lawyer's acting as both advocate and witness "is a necessary corollary to the more fundamental tenet of our adversarial system that juries are to ground their decisions on the facts of a case and not on the integrity or credibility of the advocates." (*United States v. Prantil* (9th Cir. 1985) 764 F.2d 548, 553.) The enforcement of that prohibition "is more than just an ethical obligation of individual counsel" but rather "a matter of institutional concern implicating the basic foundations of our system of justice." (*Ibid.*)

▮ Within the criminal justice system, the prohibition against a prosecutor's acting as both advocate and witness addresses "the concern that jurors

will be unduly influenced by the prestige and prominence of the prosecutor's office and will base their credibility determinations on improper factors." (*U.S. v. Edwards* (9th Cir. 1998) 154 F.3d 915, 921.) "That counsel should avoid appearing both as advocate and witness except under special circumstances is beyond question." (*United States v. Morris* (7th Cir. 1983) 714 F.2d 669, 671.) The maxim " 'justice must satisfy the appearance of justice' " reflects the "especially acute" need for public confidence in the administration of justice where the testifying attorney represents the "prosecuting arm" of government. (*United States v. Johnston* (7th Cir. 1982) 690 F.2d 638, 643.) Judicial condemnation of the "practice of serving as both prosecutor and witness" has deep roots not only in English and American law but also in Roman law. (*United States v. Birdman* (3d Cir. 1979) 602 F.2d 547, 551.)

"Combining the roles of advocate and witness can prejudice the opposing party" and confers on the opposing party "proper objection where the combination of roles may prejudice that party's rights in the litigation." (ABA Model Rules Prof. Conduct, rule 3.7, com., p. 361.) "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." (*Ibid.*)

Both Rules of Professional Conduct, rule 5-210 and ABA rule 3.7(a) set out exceptions to the prohibition against a prosecutor acting as both advocate and witness. The first is the "uncontested issue" exception. As the commentary to rule 3.7(a) notes, the "ambiguities in the dual role are purely theoretical" if the advocate testifies to an uncontested issue. (Rule 3.7(a), Legal Background.) The prosecutor's testimony about the credibility of the only witness who ever gave inculpatory information to law enforcement is the antithesis of the "uncontested issue" exception.

The second exception, testimony about "the nature and value of legal services," is likewise patently inapplicable. (Cf. Rules Prof. Conduct, rule 5-210, ABA rule 3.7(a).) The theoretical rationale for that exception is instructive nonetheless. "[A]s the judge has firsthand knowledge of the matter," the commentary to rule 3.7(a) states, " 'there is less dependence on the adversary process to test the credibility' " of testimony about the nature and value of legal services. (Rule 3.7(a), Legal Background.) Here, on the other hand, the jury as the finder of fact at the very heart of the adversary process heard the prosecutor's testimony on a topic about which the judge had absolutely no firsthand knowledge.

Rules of Professional Conduct, rule 5-210 and ABA rule 3.7(a) have different third exceptions. Rule 5-210 allows testimony by a lawyer "consistent with principles of recusal" if the head of the office consents. (Rule

5-210.) Nothing in the record shows the requisite consent. The "substantial hardship" exception in rule 3.7(a) allows testimony by a lawyer if disqualification "would work substantial hardship on the client." (ABA rule 3.7(a).) The client whom the "substantial hardship" exception protects is, of course, the client of the testifying attorney, not the client of the opposing attorney. Neither exception applies.

Case law articulates an exception neither Rules of Professional Conduct, rule 5-210 nor ABA rule 3.7(a) codifies. Although acting as both advocate and witness "is a situation to be avoided if possible," a prosecutor can do so "in extraordinary circumstances and for compelling reasons, usually where the evidence is not otherwise available." (*United States v. Johnston, supra,* 690 F.2d at p. 644.) After testifying, however, the prosecutor should "withdraw from any further participation" in the case. (*Id.* at p. 645.) To withdraw after impeaching a witness is one remedy the American Bar Association's Project on Standards for Criminal Justice suggests if a prosecutor interviews a prospective witness outside the presence of a third person. (ABA Stds. for Crim. Justice (3d ed. 1993) std. 3-3.1(g).) The other is to forgo impeachment: "Unless a prosecutor is prepared to forgo impeachment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present the impeaching testimony, a prosecutor should avoid interviewing a prospective witness except in the presence of a third person." (*Ibid.*)

██ The prosecutor's conversation with Christopher outside the presence of a third party created an "unfortunate" but resolvable dilemma. (*United States v. Vereen* (D.C. Cir. 1970) 429 F.2d 713, 714.) Doubts " 'should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate.' " (*Id.* at p. 715, fn. 3, quoting former ABA Model Code Prof. Responsibility, EC 5-10.) Although "personally to withdraw without any trial delay, substitute an associate as counsel, and then to take the stand" is a "manifestly appropriate" remedy, the lack of an objection by defendant's trial attorney failed to force that issue to adjudication by the trial court. (*United States v. Vereen, supra,* 429 F.2d at p. 715.)

A prosecutor in another "exceptional circumstances" case interviewed a witness outside the presence of a third party about the accused's pending forcible rape, oral copulation, and unlawful sexual intercourse charges. (*People v. Guerrero* (1975) 47 Cal.App.3d 441, 443-445 [120 Cal.Rptr. 732].) The witness told the prosecutor he had informed the accused of the victim's age, but at trial he testified he had neither disclosed her age to the accused nor informed the prosecutor the contrary. (*Id.* at pp. 443-444.) With

no defense objection, the prosecutor took the stand and impeached his testimony. (*Id.* at p. 444.) The prosecutor did not withdraw from the case after testifying. (*Id.* at pp. 443-444.)

Finding a " 'good deal wrong' " with the prosecutor's acting as both advocate and witness, the Court of Appeal nevertheless inferred from guilty verdicts on the two charges on which the victim's age was irrelevant that the error was harmless. (*People v. Guerrero, supra,* 47 Cal.App.3d at p. 444.) In the case at bar, in stark contrast, the Attorney General acknowledges the prosecutor's challenge to Christopher's credibility was "highly relevant" since her pretrial statements were the "heart of the prosecution's case." That record fulfills *Guerrero*'s prophecy that "we readily envision circumstances in which the testimony of a prosecutor might present issues of constitutional magnitude." (*Ibid.*)

In neither testimony nor argument should a prosecutor express a personal belief in a witness's credibility or in an accused's guilt. (*United States v. McKoy* (9th Cir. 1985) 771 F.2d 1207, 1210-1211.) Especially if witness credibility is crucial, a prosecutor's expression of a personal belief in a witness's credibility or in an accused's guilt can jeopardize the fundamental fairness of the trial. (See *U.S. v. Molina* (9th Cir. 1991) 934 F.2d 1440, 1445.) If the jury in the case at bar found credible the prosecutor's testimony that she believed Christopher did not lie in her pretrial statements (which inculpated defendant), the inference necessarily followed that Christopher did lie in her trial testimony (which exculpated defendant). On that record, the prosecutor's argument that she believed—as both witness and advocate—that defendant was guilty only intensified the prejudice of her trial testimony.

### (ii)   Ineffective Assistance of Counsel

■     Every criminal defendant has a constitutional right to competent legal representation. (*People v. Pope* (1979) 23 Cal.3d 412, 424 [152 Cal.Rptr. 732, 590 P.2d 859]; U.S. Const., Amends. VI, XIV; Cal. Const., art. I, § 15.) To establish a claim of ineffective assistance of counsel, the accused must show that the trial attorney's representation was deficient, in that it fell below an objective standard of reasonableness, and that the accused was prejudiced by the trial attorney's deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [104 S.Ct. 2052, 2064-2065, 80 L.Ed.2d 674]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217 [233 Cal.Rptr. 404, 729 P.2d 839].) To establish prejudice, the accused must show that but for the trial attorney's assertedly deficient representation it was reasonably probable that the outcome of the proceeding would have

been more favorable to the accused. (*Strickland v. Washington, supra,* 466 U.S. at pp. 688, 693-694 [104 S.Ct. at pp. 2064-2065, 2067-2068]; *People v. Ledesma, supra,* 43 Cal.3d at pp. 215-218.)

■ Errors and omissions of defendant's trial attorney denied her the right to trial court adjudication of whether the prosecutor should take the stand as a witness, whether certain questions she answered were objectionable, whether she should withdraw from the case afterward, whether certain argument she made was objectionable, and whether the jury should receive ameliorative admonition. Had he raised those issues, the trial court could have exercised its plenary authority to conform the conduct of the trial to the requirements of due process (Code Civ. Proc., § 128, subd. (a)(5)): "Every court shall have the power . . . . [¶] . . . [¶] [t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."

The errors and omissions of defendant's trial attorney created a reasonable probability of a less favorable outcome than if he had represented her competently. (*Strickland v. Washington, supra,* 466 U.S. at pp. 688, 693-694 [104 S.Ct. at pp. 2064-2065, 2067-2068]; *People v. Ledesma, supra,* 43 Cal.3d at pp. 215-218.) His representation was both deficient and prejudicial. (*Strickland v. Washington, supra,* 466 U.S. 668, 687-688 [104 S.Ct. 2052, 2064-2065]; *People v. Ledesma, supra,* 43 Cal.3d 171, 216-217.)

DISPOSITION

For the reasons stated, the judgment is reversed and the matter is remanded for a new trial.

Cornell, J., and Polley, J.,* concurred.

---

*Judge of the Tuolumne Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.