Filed 12/15/15  Peters v. O'Brien CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DAVID M. PETERS,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHAWN O'BRIEN et al.,<br><br>    Defendants and Appellants. | D066759<br><br><br>(Super. Ct. No. 37-2011-00058811-CU-MC-NC) |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Reversed.

Ellis Law Group, Mark E. Ellis, Ronald R. Poirier and Steven T. Kelly for Defendants and Appellants.

Law Offices of Joseph Adelizzi, Joseph Adelizzi; Peters & Freedman and David M. Peters for Plaintiff and Respondent.

This is an attorney disqualification dispute arising in a malicious prosecution action that plaintiff and respondent, attorney David M. Peters (Peters), filed against his former clients, defendants and appellants Shawn and Sharon O'Brien (the O'Briens), and

against their attorneys. Those attorneys, defendants and appellants Ronald R. Poirier and his law firm, the Ellis Law Group, LLP (ELG; together, the Ellis group) represented the O'Briens as defendants in a previous lawsuit by Peters that sought to collect attorney fees from the O'Briens, incurred in another underlying action in which Peters provided them legal services.

In addition to answering Peters' underlying fees complaint, the O'Briens unsuccessfully cross-complained against him and his law firm on legal malpractice grounds. Peters' firm obtained a quantum meruit recovery of attorney fees in the fees lawsuit. He has individually sued the O'Briens and the Ellis group for malicious prosecution of the cross-complaint.

Peters does not raise objections to the Ellis group continuing to defend itself. However, he successfully moved for an order disqualifying the Ellis group from further legal representation of the O'Briens in this action. Both the Ellis group and the O'Briens (sometimes together Appellants) have appealed, contending: (1) during the disqualification motion proceedings, the trial court abused its discretion by allowing Peters to introduce new discovery materials in his reply papers, without giving Appellants an opportunity to respond; (2) no adequate showing was made of any harmful conflict of interest, because the O'Briens, as clients, have waived any such objections in writing; (3) the requests to disqualify counsel were not made in a timely manner and the clients will be prejudiced by the order; (4) the trial court did not appropriately perform the required balancing analysis or make sufficient findings; (5) Peters lacked standing to move to disqualify opposing counsel.

2

We examine the order granting the disqualification motion under the abuse of discretion standard, which takes into account the legal grounds underlying the ruling. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143-1144 (*SpeeDee Oil Change Systems*).) On this record, the order is unsupported by the applicable legal principles and we reverse.

I

*FACTUAL AND PROCEDURAL BACKGROUND*

A. Nature of Proceedings; Two Underlying Litigation Matters

In 2007, Peters and his law firm (Peters & Freedman [or P&F]; not a party here), reached an oral agreement with the O'Briens to represent them in a court dispute with a third party, over allegedly defective kitchen cabinets the third party constructed for the O'Briens' home (the underlying construction defect action). Peters estimated to the O'Briens that they might recover as much as $42,000. Numerous disputes arose between attorney and clients not only about the subject of the underlying case, but also about the nature of compensation due (under a barter agreement) for the legal work.[1]

During the dispute, Peters wrote the O'Briens that they could expect a "slam dunk victory, which we _presume_ will be collectable[, of] between 20K–24K. . . . . [¶] At present, I am confident we can get $15K now. I do not believe that there is any more

---

[1]    Previously, the trial court denied anti-SLAPP motions to strike the complaint, brought by the O'Briens and the Ellis group. (Code Civ. Proc., § 425.16; all statutory references are to the Code of Civil Procedure unless noted.) We affirmed the orders denying the motions. (*Peters v. O'Brien* (Nov. 21, 2013, D062805 [nonpub. opn.] (our prior opn.).) This factual statement adopts the background information set forth in our prior opinion.

3

money available absent proceeding towards trial. I have agreed to reduce our bills and advanced costs . . . ."

Because the terms of the oral retainer agreement were disputed, Peters sought to memorialize the professional relationship in a written contract. The O'Briens resisted, talking to their long-time friend and personal attorney, defendant Poirier, a partner at the Ellis group (which was then called Ellis LaVoie et al.). Poirier sought to reconcile the situation, telling Peters the O'Briens had confidence in him and believed they would probably be recovering somewhere "between $20,000 and $15,000 [sic]." He asked Peters to forward to him any prospective settlement conference briefs. Peters' law firm then decided to withdraw as the O'Briens' counsel of record. Shortly thereafter, the O'Briens terminated Peters' employment. Mr. O'Brien communicated with the opposition in the construction defect action and he received $22,500 in settlement proceeds from the third party.

The second underlying action began when Peters and his law firm subsequently sued the O'Briens for attorney fees. Represented by Poirier and the Ellis firm, the O'Briens responded with their cross-complaint for legal malpractice and related theories (the underlying fees action; San Diego Super. Ct. No. 37-2008-00059507-CU-BC-NC). As against Peters individually, the O'Briens sought damages for constructive fraud/intentional misrepresentation (concerning the potential value of the construction defect action) and breach of fiduciary duty.

Eventually, the underlying fees action and its cross-complaint were resolved in a court trial. In its statement of decision, the trial court found that Peters' firm was entitled

4

to a quantum meruit award of $9,000. The O'Briens recovered nothing on their cross-complaint. The statement of decision made findings that the O'Briens lacked credibility as witnesses, and their expert witness on attorney representation matters was not believable.

B. Current Action; Disqualification Motion Proceedings

Peters filed this malicious prosecution case against the O'Briens and the Ellis group. He claims they acted without probable cause in bringing the cross-complaint, because they had received excellent results in the underlying construction defect case, due to the legal representation they received. He alleged that the O'Briens filed the cross-complaint to retaliate against him for filing the fees action. Peters sought damages for income he had foregone from his law firm, measured by the costs of the cross-complaint litigation. He sought punitive damages due to the allegedly unjustified "scorched earth" litigation tactics used by the O'Briens and the Ellis group.

In their answers to the complaint, all Appellants asserted numerous affirmative defenses, such as the O'Briens' reliance on advice of counsel in filing the underlying cross-complaint. In their anti-SLAPP motions to strike the complaint, each set of defendants contended Peters would be unable to establish a prima facie case. We affirmed the trial court's orders denying the motions in our prior opinion. (See fn. 1, *ante*.) Among other issues, this court discussed the claims by the O'Briens that they had relied on advice of counsel in filing their cross-complaint, so that Peters would have difficulty in prevailing on his malicious prosecution claim. We said:

5

"Here, as documented by Poirier in his July 2008 letter to Peters, defendants had full knowledge of what the actual facts were concerning the value of the O'Briens' case against the [third party cabinet company] and the propriety and terms of the oral agreement between the O'Briens and P&F before the O'Briens, with the assistance of Ellis [group], asserted a constructive fraud/intentional misrepresentation cause of action against Peters in the underlying action. As such, we conclude on this record that a reasonable jury could conclude that the O'Briens did not have an honest, good-faith belief that Peters was liable for constructive fraud/intentional misrepresentation."

Once the case was returned to the trial court, Peters' attorney wrote letters to the Ellis group in February and March 2014, objecting to Poirier's and his law firm's continued participation on behalf of the O'Briens in the action. Peters asserted that since he would be inquiring into the O'Briens' advice of counsel defense, the Ellis group might be asserting attorney-client privilege and its attorneys might be required to testify, and such a conflict was not waivable. The Ellis group responded that unspecified but adequate disclosures had been made to the clients, and they would successfully defend while asserting advice of counsel as a defense.

Peters filed a motion to disqualify the Ellis group as the O'Briens' counsel. He relied on California Rules of Professional Conduct, rule 5-210,[2] and claimed there was no indication that an informed consent had been reached to such dual representation, and that the Ellis group attorneys would undoubtedly be required to testify about what their clients told them and what advice was given. Peters argued an inherent conflict existed.

---

[2] All references to rules are to the California Rules of Professional Conduct unless otherwise specified.

The Ellis group filed a joint opposition to the motion, mainly contending that the O'Briens had provided their informed written consents to continued legal representation by their codefendants, the Ellis group. It did not provide any copy of the written consents to dual representation, based on its claims of attorney-client privilege and attorney work product protected communication, although it offered to provide the documents in camera if the court so requested.

Also in opposition to the motion, Appellants argued that no confidential information would be compromised and therefore Peters, who was not a client of the Ellis group, lacked standing to bring the motion. They claimed the motion was untimely, since the case had been pending for some time, and the clients would be financially prejudiced if they had to retain new counsel. The O'Briens provided declarations to that effect, also complaining about the quality of the legal representation Peters had provided to them.

In Attorney Ellis's declaration in opposition to the motion, he stated that he would be acting as the trial attorney, while Attorney Poirier would be a witness, and this would solve any conflict problems. He represented that no attorney-client privilege would be asserted regarding the events surrounding the underlying two cases, as opposed to the handling of the defense in the current action.

Peters filed his reply papers, along with objections to the opposing declarations (not ruled on; not relevant here). Peters contended that both form and special interrogatory responses from all Appellants, which he newly provided as attachments to a reply declaration, included their objections to the requests, attorney-client privilege and attorney work product, both as to attorneys and clients. Peters argued the objections were

7

unjustified, but he failed to acknowledge that many answers had been given. He claimed that not only Attorney Poirier but Attorney Ellis would probably be deposed in the case, because Ellis could become a witness about whether he independently corroborated some of the advice of counsel direction and communications with the clients. Peters characterized the discovery responses from Appellants (both clients and attorneys) as "cagey" on the issue of the privileges to be asserted about the advice of counsel defense.

The Ellis group's discovery responses, attached to the reply papers, reveal that with regard to Peters' special interrogatories Nos. 15 and 16 (asking it about information given to it by the clients, relevant to the affirmative defense), it reserved objections only that the questions were "overbroad, burdensome, vague and ambiguous," but gave some details in response. However, as to other special interrogatories directed toward it, the Ellis group objected to No. 13 on grounds that the question violated the attorney-client privilege (asking whether it had obtained the clients' written consents to dual representation) and to No. 14 on grounds that it called for a legal conclusion (asking whether it believed there was a conflict of interest).

The O'Briens' discovery responses attached to the reply papers show that with regard to special interrogatories Nos. 13, 14, 15 and 16, about their affirmative defense of advice of counsel, they reserved objections that the questions violated the attorney-client privilege and attorney work product doctrine, among others. Subject to and without waiving the objections, the O'Briens provided responses, respectively, on the facts, the witnesses, and the documents on which they were relying, as well as the substance of the opinions and advice provided to them by the Ellis group.

Peters argued in the reply papers that disqualification remained appropriate, because if the Ellis group were able to argue the legal effect of its own member's percipient testimony (Poirier's) to the jury, "the jury may not be able to distinguish between 'argument' and 'factual matters' in order to properly tackle their task in this case." To defend the timeliness of the motion, Peters pointed out that discovery had been stayed during the pendency of the anti-SLAPP proceedings and appeal, and claimed he acted as soon as reasonably possible.

## C. Hearing and Ruling

At argument on the motion, the trial court acknowledged the strength of the rule that clients are normally entitled to choose their own counsel, even if that counsel might be hampered by conflicting positions. The court nevertheless concluded that the Ellis group and the O'Briens were still raising attorney-client and work product privileges as defenses to discovery, and disqualification was necessary. Counsel for Appellants objected that it had properly claimed those privileges to some extent in the current action, giving as an example that Peters had asked *the Ellis group* (in special interrogatories Nos. 13 and 14) whether it had obtained the clients' written consent to dual representation, and whether there was arguably conflict in the dual representation *in the current action*. The Ellis group had declined to answer those questions, based on attorney-client privilege (No. 13) and as legally conclusory (No. 14).

Counsel for Appellants argued that adequate responses to the special interrogatories, as demonstrated in the reply papers, had been made with respect to the advice of counsel defense. He did not specify whose responses he was discussing, but

9

represented that Appellants were not asserting any such privileges *with respect to the underlying two actions.* He made a broad argument that in the current malicious prosecution action, Appellants would not be claiming attorney-client privilege or work product doctrine in pursuing their advice of counsel affirmative defense (about why the O'Briens prosecuted the underlying cross-complaint).[3] Moreover, the clients had waived any potential conflict problems.[4]

The court then examined the text of the form interrogatory responses (not the special interrogatory responses), and observed that attorney-client privilege and attorney work product doctrine objections were being asserted. Counsel for Appellants requested that the trial court give it an opportunity to respond to the new arguments and evidence in the reply brief, by providing a written surreply brief.

Counsel for Peters responded that no "partial waiver" of conflict was possible, and complained that the Ellis group was consistently saying one thing and doing another

---

[3]    All the briefs are most unclear as to which answers or objections to the special or the form interrogatories were given by the Ellis group, or by the O'Briens. The O'Briens did make and reserve objections of attorney-client privileges and work product on the advice of counsel defense, but they also gave answers to some extent, to both form and special interrogatories. Neither counsel acknowledged during the trial court hearing that the clients had asserted these privileges to preserve them, then answered. The Ellis group attorney emphasized only that it had dropped its own privilege objections in two out of four of its responses to special interrogatories (the information provided to them by the clients concerning the two underlying actions).

[4]    The Ellis group declined to provide the waivers, and apparently the trial court did not request to see them. However, it is essentially undisputed that the written conflict waivers existed and the record supports that assumption.

when the opportunity presented itself, such as whether they were going to raise the attorney-client privilege. The court took the matter under submission.

The court issued a written order granting the motion to disqualify, "based on Defendants' assertion of the attorney client privilege in response to discovery requests as to the advice of counsel defense." The court stated that it had weighed the benefits and burdens and, under the circumstances, determined that disqualification was appropriate. The court then observed that because the reply brief had raised "this new issue, an alternative resolution can be to strike the affirmative defense of advice of counsel." No such alternative resolution occurred and this appeal followed.

II

*DISQUALIFICATION OF COUNSEL*

A. Applicable Standards

In reviewing a trial court's discretionary ruling on a disqualification motion, we accept as correct all express or implied findings that are supported by substantial evidence. (*SpeeDee Oil Change Systems, supra*, 20 Cal.4th at pp. 1143-1145.) "However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*Id.* at p. 1144; § 128, subd. (a)(5).)

When ruling on a disqualification motion, the trial court must indicate on the record that it has considered all appropriate factors and must give its factual findings in

support of the required balancing process. (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 582 (*Smith, Smith & Kring*); *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, 482-483 (*Lyle*).)

"The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*SpeeDee Oil Change Systems, supra,* 20 Cal.4th at p. 1145.) "Depending on the circumstances, a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." (*Ibid.*) "The paramount concern is the preservation of public trust in the scrupulous administration of justice and the integrity of the bar." (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 705.) An attorney shall refrain from doing " 'anything which will injuriously affect his former client.' " (*People ex rel. Deukmejian v. Brown* (1981) 29 Cal.3d 150, 155; *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573-574.)

A disqualification motion may be based on an attorney's dual roles as an advocate and a witness. "The 'advocate-witness rule,' which prohibits an attorney from acting both as an advocate and a witness in the same proceeding, has long been a tenet of ethics in the American legal system . . . ." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1208 (*Kennedy*).) " 'Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness.

Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.' " (*People v. Donaldson* (2001) 93 Cal.App.4th 916, 927-928 (*Donaldson*).)

In some cases, " '[c]ombining the roles of advocate and witness can prejudice the opposing party' and confers on the opposing party 'proper objection where the combination of roles may prejudice that party's rights in the litigation.' [Citation.] 'A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.' " (*Donaldson, supra,* 93 Cal.App.4th at p. 929.)

### B. Exceptional Situations

There are exceptions to the witness-advocate rule. "[T]he State Bar [of California] has adopted a rule of professional conduct that prohibits, with few exceptions, a lawyer from acting as both advocate and witness [citation]." (*Donaldson*, *supra*, 93 Cal.App.4th at p. 927, citing rule 5-210.) Rule 5-210 states:

> "A member shall not act as an advocate before a jury which will hear testimony from the member unless:
>
> "(A) The testimony relates to an uncontested matter; or

"(B)  The testimony relates to the nature and value of legal services rendered in the case; or

"(C)  The member has the *informed, written consent of the client. . . .*"  (Italics added.)

Even if an advocate-witness has obtained the informed written consent of the clients, the trial court may exercise its discretion to disqualify counsel where he or she is a material witness in the case, if the integrity of the judicial process would become compromised.  (*Lyle, supra,* 122 Cal.App.3d 470, 482; *Smith, Smith & Kring*, *supra*, 60 Cal.App.4th 573, 579 [disqualification justified where convincing demonstration of detriment to the opponent exists, or injury shown to integrity of judicial process]; *Reynolds v. Superior Court* (1986) 177 Cal.App.3d 1021, 1028.)

III

*PRELIMINARY CONSIDERATIONS FOR ANALYSIS*

A.  Elements of Affirmative Defense

To assert the advice of counsel defense, the O'Briens will be required to show they (1) consulted with a lawyer (i.e., Poirier from the Ellis group) in good faith; (2) communicated all the relevant facts to their lawyer; (3) were advised by their lawyer that they had a valid cause of action; and (4) honestly acted upon the lawyer's advice.  (See *Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1383.)  As explained in our prior opinion, the burden of proving good faith reliance on the advice of counsel falls on the party asserting the defense.  (*Ibid.*)

The O'Briens have already admitted that before they sued Peters for constructive fraud/intentional misrepresentation, they conferred with Poirier of the Ellis group.  As

14

explained in our prior opinion, when Poirier wrote to Peters to present their position, he acknowledged that " '[a]lthough not recommended, oral fee agreements can be an acceptable form of fee agreement between the attorney and client under certain circumstances, providing the essential terms are discussed and agreed upon, which appears to be the case here.' " Poirier told Peters, "the O'Briens then had the 'utmost confidence' in P&F's continued representation of their interests against the [third party cabinet company] under the then-applicable oral agreement." He explained to Peters that the clients were then expecting to recover between $15,000 to $20,000 in the underlying construction defect action. This background is relevant to the advice of counsel defense, regarding discovery about Appellants' probable cause to bring that cross-complaint in the fees litigation, as discussed at the hearing on the motion.

### B. Standing and Timeliness of Motion

A moving party "must have standing, that is, an invasion of a legally cognizable interest, to disqualify an attorney." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1357.) Standing, a question of law, may be determined independently of the trial court's ruling. (*Id.* at p. 1354; *Kennedy*, *supra*, 201 Cal.App.4th at p. 1204 ["[N]o California case has held that only a client or former client may bring a disqualification motion."].)

The case before us does not involve the frequently advanced ground for disqualification motions, alleged sharing of confidential information (e.g., an attorney's simultaneous or successive representation, in which confidentiality breaches may occur). (See rule 3-310(E) [an attorney "shall not, without the informed written consent of the

15

client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, *the member has obtained confidential information material to the employment*"; italics added].)

Rather, we consider the operation of the advocate-witness rule. At least arguably, a legally cognizable interest for disqualifying an opposing attorney may arise from generalized policy concerns surrounding the rule, e.g., the integrity of the judicial process. (*Lyle, supra*, 122 Cal.App.3d at pp. 482-483.) In this factual context, we may appropriately assume without deciding that Peters may assert standing to object to opposing counsel's continued representation of the O'Briens.

We cannot accept Appellants' argument that Peters failed to make the request to disqualify counsel in a reasonably timely manner. The anti-SLAPP proceedings, discovery stay and appeal were pending for some time, and the motion followed soon afterwards. (§ 425.16, subds. (g), (i).) Peters had already written the Ellis group attorneys to seek an informal resolution on recusal. We may appropriately address the validity of Peters' central claim, that if the Ellis group attorneys act in the dual roles of advocates and witnesses, it may become unclear to a jury whether it should consider their statements to be evidence, as opposed to analysis and argument on the evidence. (See *Donaldson*, *supra*, 93 Cal.App.4th at p. 929.)

16

IV

*APPLICATION OF RULES*

A.  Evaluation of Discovery Responses

Appellants claim in their opening brief that the trial court should not have accepted Peters' reply argument "that *no response had been given* by the O'Briens to the inquiries about the advice of counsel defense."  (Italics added.)  Peters, on the other hand, argues the trial court properly exercised its discretion in concluding that all Appellants had asserted an "*unlimited attorney-client privilege objection*" on the affirmative defenses. (Italics added.)   Both positions are inaccurate and too extreme.

It is significant here that the trial court, at the reply stage of the motion proceedings, received new facts and argument on the disqualification issue.  Generally, a trial court has discretion whether to accept new evidence in reply papers.  (*Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1307-1308 (*Alliant Ins. Services*); *Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8.)  In exercising such discretion, the court should determine whether an opportunity to respond is warranted, based on the nature of the new material.  (*Ibid.*)

The trial court made an implied determination that both the Ellis group and the O'Briens were still raising attorney-client and work product privileges as defenses to discovery, to a significant degree that would interfere with the ongoing representation. (*Donaldson, supra,* at 93 Cal.App.4th at pp. 927-929.)  We examine the basis for that conclusion as it relates to the O'Briens' alleged reliance on counsel in bringing their underlying cross-complaint.  (*Palmer v. Zaklama*, *supra*, 109 Cal.App.4th at p. 1383.)

17

## 1. *Form Interrogatory No. 15.1*

The reply papers first presented responses made by all Appellants to Peters' form interrogatory No. 15.1, inquiring about all of the affirmative defenses. Each of the Appellants had stated and reserved objections based on attorney-client privilege or work product doctrine. Each then provided answers to the form interrogatory about the bases for asserting various defenses, including advice of counsel. The Ellis group supplied basic information about its consultations with the O'Briens and what the O'Briens said.

After reserving their privilege objections to answering form interrogatory No. 15.1, the O'Briens went on to disclose what they told the Ellis group about their problems with Peters. They stated they had discussed Peters' work, telling the Ellis group that Peters had initially said their construction defects case recovery would be over $40,000, but he later devalued their claims without explaining any justification. Peters had represented to them that no fee agreement in writing was required, but then he demanded one. They complained he failed to obtain a conflicts waiver, and did little work or investigation on the matter and did not keep them updated on the proceedings, such as forwarding a settlement offer. Based on those facts and discussions with counsel, the O'Briens decided to file their cross-complaint. They then listed their known witnesses and the documents on which they would be relying, i.e., the underlying case files.

## 2. *Special Interrogatories, the Ellis group*

In the respective sets of special interrogatories at issue here, the questions asked were somewhat different as to the two sets of Appellants. This was not made clear at the hearing. As to the Ellis group, it was asked in No. 13 whether it had obtained the clients'

18

written consent to dual representation. In No. 14, Peters asked about the Ellis group's beliefs on whether a conflict of interest existed in the dual representation. Objecting, the Ellis group refused to answer, claiming attorney-client privilege in No. 13 and that No. 14 was legally conclusory in nature.

Next, special interrogatories Nos. 15 through 17, directed toward the Ellis group, asked about the information provided to it by the O'Briens (information, witnesses and documents). The Ellis group objected generally only as "overbroad, burdensome, vague and ambiguous as phrased" (not claiming privileges). On No. 16, regarding the identity of witnesses who had knowledge about the advice of counsel defense, the Ellis group answered by identifying the friend who had referred the O'Briens to Peters, and the fellow employees at Peters' firm, etc. On No. 17, about what documents were supplied by the clients, Poirier responded that they received the underlying case files and depositions from the O'Briens.

### 3. Special Interrogatories, the O'Briens

With regard to all four of Peters' special interrogatories that inquired of the O'Briens about their affirmative defense of advice of counsel (Nos. 13, 14, 15, 16), they reserved objections that the questions violated the attorney-client privilege and attorney work product doctrine, among others.

Subject to and without waiving the objections, the O'Briens then provided responses to special interrogatories Nos. 13, 14, 15 and 16, on the bases for their advice of counsel defense. These answers mainly duplicated their responses previously given to form interrogatory No. 15.1, about the bases for asserting the advice of counsel defense.

19

These special interrogatories and the O'Briens' responses were broken down into four categories, for disclosure of, respectively, (No. 13) the facts known, (No. 14) the witnesses known, (No. 15) the documents to be used, and (No. 16) "the substance of all opinions and advice provided to you by counsel which you claim forms the basis of your third affirmative defense (advice of counsel)."

The latter answer (to special interrogatory No. 16) provided new information, that the O'Briens had discussed with the Ellis group "the general logistics/procedures/ standards of civil litigation and burdens of proof at trial; the differences/advantages/ disadvantages between a jury and a bench trial; the possibility of prevailing and/or not prevailing at trial; and the evidence available at that time."

### B.  Effect of New Material in Reply Papers

Unfortunately, it was not made clear at the hearing before the trial court that the Ellis group had only dropped any attorney-client privilege or work product doctrine objections, as to its own special interrogatories Nos. 15 and 16.  It continued to assert attorney-client privilege as to question No. 13 (the existence of a written conflict waiver), and it objected to the question about its beliefs about any existing conflict (No. 14).  (See fn. 3, *ante* [written waivers withheld].)

Regarding the O'Briens' answers about their crucial advice of counsel defense, neither counsel clarified during the hearing that the O'Briens had only conditionally asserted the attorney-client privilege or work product doctrine objections on all four of the special interrogatories directed toward them (Nos. 13-16).  The O'Briens did provide

20

answers after those objections, about what they told the Ellis group about the two underlying cases.

In light of this record, the discussion at the hearing about which privileges had been asserted, and by whom, was truncated and misleading. The trial court initially indicated it was going to deny the motion, but then explained that the reply papers were persuasive. All the participants were comparing the proverbial apples and oranges, in terms of which privileges were being asserted without any conditions, as to which of the form or special interrogatories, and by whom. Although both the form and the special interrogatories had been answered with initial sets of objections, substantive answers were nevertheless given about the information that both the Ellis group and the O'Briens had about the underlying cross-complaint and fee dispute. The Ellis group only continued to resist disclosure about the written waivers and its beliefs on conflict in the current action.

At the hearing, the trial court was not given and evidently did not obtain the whole picture about the assertion of the privileges. Its analysis seemed to focus on the form interrogatories, not the special interrogatories, and its refusal to allow the filing of surreply papers meant that the confusion at the hearing about the scope of the privileges being asserted, and by whom, was not fully vetted or taken into account.

For this reason, we believe it was an abuse of discretion for the trial court to issue the ruling without giving the Ellis group and the O'Briens an opportunity to respond to the special interrogatory information Peters had provided in the reply papers. (*Alliant Ins. Services, supra,* 159 Cal.App.4th at pp. 1307-1308.) Moreover, the trial court did not

21

solve the problem by including in its ruling that an alternative resolution would be to strike the affirmative defense of advice of consent. Evidently, that has not yet occurred by order or stipulation.

## C. Showing on Merits

In exercising discretion on whether an attorney who may testify must be recused, the trial court must weigh the competing interests of the parties and consider any potential adverse effects on the integrity of the proceedings. The court " 'should resolve the close case in favor of the client's right to representation by an attorney of his or her choice . . . .' " (*Smith, Smith & Kring*, *supra*, 60 Cal.App.4th 573, 580.) The factors to be considered include (1) "the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case" (*ibid*.) and (2) whether counsel may be "using the motion to disqualify for purely tactical reasons." (*Id*. at p. 581.) Overall, the court must preserve the integrity of the judicial process. (*Ibid*.)

A relevant factor in determining the necessity or appropriateness of counsel's testimony in this context concerns " 'the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established.' [Citation.] The court should also consider whether it is the trial attorney or another member of his or her firm who will be the witness." (*Smith, Smith & Kring, supra,* 60 Cal.App.4th at p. 581.)

22

Applying these tests, it is significant that the O'Briens represented in their declarations that they have waived in writing any conflict objections regarding the dual representation. (Rule 5-210(C).) " '[T]he fact that the client has consented to the dual capacity must be given great weight.' " (*Smith, Smith & Kring, supra,* 60 Cal.App.4th at p. 580; *Reynolds v. Superior Court, supra*, 177 Cal.App.3d at p. 1028.). Although any resolution of the current malicious prosecution allegations must delve into the manner in which the underlying actions were conducted, the O'Briens were evidently advised of potential conflicts in that respect and agreed to waive them. They claim it would be financially disadvantageous to them to obtain new counsel.

At the hearing, the extent of assertion of the O'Briens' attorney-client privilege or work product remained unclear. Although Appellants' trial attorney Ellis represented to the trial court that no such privileges were being asserted on his side regarding the underlying two actions, he failed to acknowledge that the O'Briens had continued to assert them to some extent. Peters' attorney only argued for "a hopeless conflict," without acknowledging that many disclosures had already been made. Incomplete information was put forward on the status of the attorney-client privilege and work product doctrine objections. " 'Speculative contentions of conflict of interest cannot justify disqualification of counsel.' " (*Smith, Smith & Kring*, *supra*, 60 Cal.App.4th at p. 582.)

The trial court was properly concerned with whether Poirier would be acting as the trial attorney as well as a witness, and it received assurances from the Ellis group that the trial attorney would be Ellis. (*Smith, Smith & Kring, supra,* 60 Cal.App.4th at pp. 580-581.) Even assuming Poirier will be a material defense witness, the trial court's

23

balancing of competing interests did not address whether jury confusion is a strong possibility due to the witness-advocate situation. (*Donaldson, supra,* 93 Cal.App.4th at p. 929.) The trial court did not explain how the integrity of the judicial process would be offended through such continued arrangements, especially in light of the confusion at the hearing about the extent of any privileges still being claimed.

On the factor of whether Peters is pursuing the motion to disqualify for purely tactical reasons, the record is equivocal. We cannot conclude from the record on the motion that the O'Briens' continued representation by the Ellis group will threaten Peters or the O'Briens with any type of significant injury, nor that it will obviously undermine the integrity of the judicial process. (*Kennedy, supra*, 201 Cal.App.4th at pp. 1204-1205; *Smith, Smith & Kring*, *supra*, 60 Cal.App.4th at p. 579.) There was a strong showing of prejudice to the O'Briens if disqualification were required, and the availability of a different trial attorney within the Ellis group means that the proposed testimony from Poirier will not necessarily be irreconcilable with appropriate judicial proceedings. Taken in context, the new information provided in the reply papers or the moving papers, did not demonstrate there was a significant or convincing risk to the integrity of the proceedings that would justify the disqualification relief.

The written ruling stated in a conclusory fashion that the trial court had weighed the benefits and burdens, under the circumstances, and determined that disqualification was appropriate. There were no supporting findings of fact about the significance of the conflicting considerations in the balancing process. (*Lyle, supra*, 122 Cal.App.3d at pp. 482-483; *Smith, Smith & Kring*, *supra*, 60 Cal.App.4th at p. 582.) We cannot conclude

24

on this record that the trial court's ruling represented an appropriate exercise of discretion within the applicable legal principles.  The order granting the motion to disqualify counsel is reversed.

## DISPOSITION

The order is reversed.  Costs on appeal to Appellants.

HUFFMAN, Acting P. J.

WE CONCUR:

AARON, J.

PRAGER, J.*

---

*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.