Filed 9/17/20  Diller v. Safier CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RONALD DILLER,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JACLYN SAFIER et al.,<br><br>    Defendants and Appellants. | A157698<br><br>(San Mateo County Super. Ct. No. 18-PRO-01127) |

The law firm of Arnold & Porter Kay Scholer LLP (Arnold & Porter) along with defendants Jaclyn Safier (Jackie), The Helen Diller Foundation, and The Helen Diller Family Foundation appeal the trial court's order granting plaintiff Ronald Diller's (Ron) motion to disqualify Arnold & Porter from continuing to represent defendants in a civil action involving Jackie and Ron's parents' trust.[1]  We affirm.

---

[1]    For ease of reference, and with no disrespect intended, we refer to the parties and individuals who share the last name by their first names.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The facts relating to the trust action are detailed in our prior opinion, *Diller v. Safier* (Jun. 23, 2020, A157498 [non pub. opn.]), of which we take judicial notice. To summarize, Helen and Sanford Diller—parents of Ron and Jackie (and a third child Bradley, who is not a party to the action)—built a successful real estate development and property management company and donated or committed over one billion dollars to philanthropic and charitable causes. In 1981, they created the DNS Trust which provided in part that upon the death of the first spouse: (1) the deceased spouse's share of the assets would be placed in irrevocable sub-trusts; and (2) the surviving spouse's share of the assets would be placed in a Survivor's Trust, which would set forth the surviving spouse's testamentary wishes and remain revocable during that spouse's lifetime.

Helen died in 2015. Under the terms of the DNS Trust, Helen's one-half share of the marital assets was placed in irrevocable sub-trusts and Sanford became trustee of a Survivor's Trust that contained his one-half share of the marital assets. According to Ron, Helen said on many occasions that she was leaving a "legacy" for her family, i.e., leaving some or all of her share of the estate to her children and grandchildren. Ron did not seek copies of any trust documents at the time of Helen's death as he did not expect any immediate inheritance. Rather, he believed Helen's assets would be placed in irrevocable sub-trusts that would be distributed upon Sanford's death.

Sanford died in 2018. Shortly thereafter, Helen and Sanford's long-time estate planning attorney, Thomas Richardson of Arnold & Porter, informed Ron that Ron was the beneficiary of a $3 million trust of which Richardson was trustee, and that funds would be distributed to Ron for

"medical emergencies and financial exigencies only." Richardson also informed Ron that Jackie was successor trustee of the Survivor's Trust and had retained Richardson to represent her in that capacity. Ron asked Richardson for copies of his parents' trusts, including the DNS Trust, which he believed set forth his mother's intent to leave a family legacy. Richardson denied the request, noted the Survivor's Trust contained a no-contest clause, and cautioned Ron "against taking any actions that might jeopardize your and your children's inheritance under the trust."

On July 31, 2018, Ron filed a civil action in San Francisco Superior Court against Jackie, The Helen Diller Foundation, and The Helen Diller Family Foundation (against the foundations only to the extent they received assets owing to Ron). He alleged Jackie interfered with Helen's intent to leave a family legacy by, among other things: concealing crucial information regarding the trusts; signing, without authority, an amendment to the Survivor's Trust on behalf of Sanford the day he died; "silenc[ing]" Helen's caretaker who was privy to the wrongdoing by giving her a "pay[] off" of $2.5 million and a Porsche; and threatening Ron and sibling Bradley with disinheritance as to them and their children if they "collaborat[ed] with or even discuss[ed] any possible claims" with each other. In his amended (operative) complaint, Ron alleged that because Sanford and Jackie did not like that Helen had left a family legacy, Arnold & Porter/Richardson drafted trust documents allowing Sanford to improperly funnel the funds from Helen's sub-trust—which was supposed to have become irrevocable upon her death—to Sanford's Survivor's Trust so that Sanford could control the funds and he and Jackie could thwart Helen's testamentary wishes.

Defendants retained a number of attorneys from several law firms including Arnold & Porter to defend against Ron's action. They filed a

3

successful motion to transfer the action to San Mateo Superior Court in addition to a petition for the sale of real estate and petition for instructions on how Jackie should proceed in her capacity as successor trustee of the Survivor's Trust.

Ron filed an anti-SLAPP motion (Code Civ. Proc., § 425.16).[2]  A few months later, after learning through discovery that Arnold & Porter had served as Helen's estate planning attorney for many years, Ron filed the motion at issue in this case—a motion to disqualify Arnold & Porter from continuing to represent defendants.  He asserted Arnold & Porter had nine conflicting roles as:  (1) Helen and Sanford's long-time estate planning attorney; (2) Sanford's estate planning attorney upon Helen's death; (3) counsel to Sanford's estate upon Sanford's death; (4) Jackie's attorney in her capacity as successor trustee; (5) debt advisor to Jackie in connection with her role in the family company; (6) trustee of Ron's $3 million trust; (7) legal counsel to The Helen Diller Family Foundation, which Helen controlled; (8) legal counsel to The Helen Diller Foundation, which, according to Ron, Richardson formed for Sanford after Helen's death as part of Richardson's/Jackie's/Sanford's scheme to place Helen's assets under Sanford's control; and (9) litigation attorneys to defendants in Ron's action.

He argued that these "overlapping roles" created "competing fiduciary duties" that were "impossible to fulfill" and required the firm to compromise at his expense.  For example, Arnold & Porter had a duty not to use former client Helen's confidential information and a duty to uphold her testamentary wishes (as Ron was attempting to do through his civil action); at the same

---

[2]    The trial court granted Jackie's petition for instructions and denied Ron's anti-SLAPP motion.  Ron appealed the denial of his anti-SLAPP motion, and we affirmed.

4

time, the firm had a conflicting duty of loyalty to current client Jackie who was attempting to thwart Helen's wishes. It was problematic that Richardson, who drafted all relevant trust documents and represented almost everyone involved, was a key witness in the action. Richardson's fiduciary duties to Ron as trustee to Ron's $3 million trust also conflicted with the firm's loyalties to Sanford and Jackie. Ron explained that after Jackie retained Arnold & Porter to defend her in this action, he asked Richardson to step down as trustee of his $3 million trust. Richardson refused to do so, and another Arnold & Porter attorney sent a letter to Ron stating there was no conflict of interest and that the firm would seek attorney fees from Ron if he tried to have Richardson removed as trustee.

In opposing the motion, defendants acknowledged Richardson and Arnold & Porter's various roles but argued Ron lacked standing to seek disqualification because he was not a current or former client of the firm. Defendants argued Richardson's status as trustee of Ron's $3 million trust, "standing alone," was not disqualifying, and that Ron's "generalized complaints about 'multiple roles' " were not valid bases for disqualification. Defendants also argued that the likelihood Richardson would be a witness did not preclude the firm's litigation attorneys from representing Jackie.

At a May 13, 2019 hearing on Ron's motion to disqualify, the trial court noted Ron could have named Arnold & Porter and Richardson as defendants in the action. "And perhaps for some tactical reason [Ron] decided not to allege them as co-defendants. . . [But if he did], there would be a clear conflict between their interests and those of Jackie and the trust." "Basically, [this case is] about whether . . . Helen's[] estate planning was fairly implemented, or whether it was frustrated and defeated by Sanford and Jackie and others working with them." "The allegations are . . . that Sanford, after . . . Helen

5

predeceased him, . . . looted her estate, with the assistance of Jackie . . . and the involvement of counsel, [and] that Helen's estate planning was defeated by their actions." "Arnold & Porter was involved in . . . not only drafting a lot of the documents but, also, . . . work[ed] together with Jackie after Sanford's death." Ron's attorney added it was also problematic that "Arnold & Porter is [Ron's] trustee under one of the looted sub[-]trusts and did not fight to fund that sub[-]trust. . . ."

The trial court noted that Sullivan & Cromwell LLP (Sullivan & Cromwell)—one of the other law firms representing Jackie—has "thousands" of attorneys "globally," and "if need be, . . . could assign several hundred attorneys to assist in this said defense . . . involving more than a billion dollars." The court queried, "They don't have either the resources or the expertise to adequately defend the trust?" An Arnold & Porter attorney responded that Jackie was entitled to her attorney of choice. A Sullivan & Cromwell attorney added, "the question isn't whether or not one firm can do all this work. The question is whether the trustee is entitled to the counsel of her choice; counsel that is steeped in some of this stuff. . . ." The court agreed that a party's right to choice in counsel is "an important interest."

Ron's attorney addressed the issue of standing and argued Ron did not have to be an Arnold & Porter client to bring this motion. He stated, "[T]his is a trust case. I think counsel just misunderstands what standing is here. Our client is both a beneficiary and, of course, an heir." The trial court stated, "Of course, the court has an independent duty to ensure the integrity of the proceedings, irrespective of the standing issue." Ron's attorney responded, "Absolutely. And I would point out . . . that the confidential or fiduciary relationship that needs to exist to require disqualification is not absolute. It's simply the prospect." The court concluded, "I have no doubt

6

that the motion to disqualify is meritorious, and the court will exercise its independent authority and grant the motion to disqualify [Arnold & Porter] in this proceeding." The court issued a written order stating Richardson and Arnold & Porter are, effective immediately, "disqualified from serving as legal counsel to any party, personal representative, estate, executrix, trust, sub-trust, or trustee in the civil action . . . or the corresponding trust proceeding . . . and are precluded from representing any party related to such matters, including but not limited to, representing Defendants [Jackie and the foundations], whether in relation to this civil litigation or in the corresponding trust proceeding. Defendants and Arnold & Porter appeal.

## DISCUSSION

Trial courts have great latitude in deciding whether to disqualify counsel, and a decision on disqualification must be affirmed absent an abuse of discretion. (*Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 46–47; *Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856, 860 (*Federal Home Loan*).) The trial court's ruling is presumed correct (*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1451) and reversal is proper "only when there is no reasonable basis for the trial court's decision" (*Federal Home Loan*, at p. 860).

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' (Code Civ. Proc., § 128, subd. (a)(5).)" (*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sysm., Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil*).) Depending on the circumstances, a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's

7

interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion. (*Id*. at p. 1144.) Determining whether a conflict of interest requires disqualification, however, "involves more than just the interests of the parties." (*Id*. at p. 1145.) "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*Id*. at pp. 1145–1146.)

A disqualifying conflict of interest can arise in a number of situations. In cases of successive representation, where an attorney seeks to represent a client with interests that are potentially adverse to a former client, "access to confidential information by the attorney in the course of the first representation . . . is *presumed* and disqualification of the attorney's representation of the second client is mandatory," so long as there is a "substantial relationship" between the subject matter of the representations. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 [also holding that disqualification of an attorney normally extends vicariously to the attorney's entire law firm].) This is because "[p]rotecting the confidentiality of communications between attorney and client is fundamental to our legal system." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146; *Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599 [attorney-client privilege is "hallmark of [our] jurisprudence"].) Thus, even after termination of a representation, "[it is] a basic obligation of every attorney . . . '[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.' (Bus. & Prof. Code, § 6068, subd. (e).)" (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146.)

A related but distinct fundamental value of our legal system is the attorney's obligation of loyalty. Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process. (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 547–548, fn. 6, superseded by statute on another ground as stated in *Coachella Valley Mosquito and Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1084.) The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel. (*Flatt v. Superior Court*, *supra*, 9 Cal.4th at pp. 282, 285.) "An attorney's duty of loyalty to a client is not one that is capable of being divided. . . ." (*Id.* at p. 282.)

In *Fiduciary Tr. Int'l of Cal. v. Super. Ct.* (2013) 218 Cal.App.4th 465, 470, an attorney from the law firm of Sandler & Rosen drafted an estate plan for a married couple. The husband Willet's will established a marital trust—which was expected to generate several million dollars in annual income—and named his wife Betty as income beneficiary. (*Id.* at p. 471.) Upon Betty's death, the principal of the marital trust was to be transferred to a second trust for the benefit of Willet's four children—three children from his former relationship and one daughter he had with Betty. (*Ibid.*) Betty's will also left the majority of her estate to the second trust (for the four children). (*Ibid.*) After Willet died, however, Betty revoked her will and had a new instrument drafted (apparently by a different law firm) transferring the majority of her assets to a different trust for the sole benefit of her daughter. (*Id.* at p. 472.) Following Betty's death, a dispute arose regarding whether Willet's three other children should be required to pay estate and inheritance taxes that were due on Betty's assets, all of which Betty's daughter was going to inherit.

9

(*Ibid.*)  The three children, represented by Sandler & Rosen, argued this was not Willet's intent.  (*Ibid*.)  Fiduciary Trust International of California, as administrator of Betty's estate, moved to disqualify Sandler & Rosen because of the firm's prior representation of Betty.  (*Ibid*.)

The Court of Appeal granted the motion, stating, "While Sandler & Rosen initially represented both Betty and Willet, they have now chosen to continue to represent only Willet, through [his three children], taking a position adverse to Betty."  (*Id.* at p. 480.)  Because Sandler & Rosen's representation of Betty was substantially related to the current tax dispute, it was presumed the firm obtained confidential information in the course of the first representation; thus, disqualification was mandatory.  (*Ibid*.)  The court also stated it was problematic that the firm had failed to obtain written consent for joint representation from Betty (or Willet) at the time it prepared the couple's estate planning papers.  (*Id.* at p. 489.)

The risks involved with successive representation, including the potential for breach of the attorney-client privilege and of an attorney's undivided duty of loyalty to a client, are similarly present in this case.[3]  It is

---

[3]     Defendants argue *Fiduciary Tr. Int'l of Cal. v. Super. Ct.*, *supra*, 218 Cal.App.4th 465 is distinguishable because Arnold & Porter is *defending* (as opposed to attacking) former client Helen's testamentary wishes. Defendants argue their situation is more similar to *Baker Manock & Jensen v. Superior Court* (2009) 175 Cal.App.4th 1414, 1423, 1424 (*Baker*), in which the Court of Appeal held that disqualification of a law firm—which previously represented the decedent and was now representing the executor and beneficiary—was improper where the interests of the executor and beneficiary, and likely those of the decedent, were aligned and the law firm was therefore attempting to uphold the decedent's testamentary wishes.  Here, however, the core dispute in this action is *whether* Arnold & Porter is in fact upholding former client Helen's testamentary wishes or, instead, is defending the wishes of subsequent and current clients Sanford and Jackie, which differ from what Helen intended.  The very nature of the

10

undisputed that Arnold & Porter, throughout the years, has represented or currently represents most of the key players involved in the issues relating to Ron's action. As noted, the firm represented Helen (and Sanford) for many years, represented Sanford after Helen's death, was legal counsel to Sanford's estate after his death, is trustee to Ron's $3 million trust, is legal counsel to the foundation defendants, and represents Jackie in multiple capacities. Most, if not all, of these representations involve the same or substantially similar subject matter that is at issue in Ron's action.

In its role as Helen's estate planning attorney, Arnold & Porter drafted many trust documents and presumably had extensive communications with her regarding those documents. We also presume Arnold & Porter obtained confidential information from Helen regarding her testamentary wishes—the issue that is at the heart of the current dispute. After Helen's death, Arnold & Porter engaged in successive representation of Sanford individually, then Jackie, in various capacities, despite the fact that Sanford and Jackie, at least potentially, had interests that conflicted with those of Helen. For example, Ron alleges—and defendants do not dispute—that Helen and Sanford had a troubled marriage, that Sanford cut of all contact with Ron and insisted that Helen do the same, and that Helen, despite this, continued to share a close and loving relationship with Ron. Jackie, on the other hand, was close to Sanford, and their interests were aligned. It is rational to

---

dispute in this case involves the problems that arise with successive representation and calls into question Arnold & Porter's duties of loyalty and confidentiality owed to its various clients. Further, as noted by the Court of Appeal in *Baker*, it is not uncommon for law firms to represent different family members at various times in estate planning matters, but disqualification is still proper where there is an actual or potential conflict of interest, which there is in this case. (*Ibid.*)

conclude based on these family dynamics that some differences would arise in connection with the various parties' testamentary wishes and goals. (See *Flatt v. Superior Court, supra*, 9 Cal.4th at p. 283 [the potential for conflict is sufficient to support disqualification].)[4] There is nothing in the record indicating Arnold & Porter obtained Helen's written consent for joint representation of her and Sanford, or successive representation of Sanford, and later Jackie. (See *City Nat'l Bank v. Adams* (2002) 96 Cal.App.4th 315, 318 [absent the former client's informed written consent, a lawyer may not represent a party whose interests may be adverse to the former client because doing so poses distinct risks].)

Further, as current counsel for Jackie in various capacities, including defending her in this action, Arnold & Porter owes Jackie a duty of undivided loyalty, but at the same time has a continuing duty of loyalty and confidentiality to Helen, whose testamentary intent and wishes may have differed from those of Sanford and Jackie. Arnold & Porter is therefore in the untenable position of potentially defending Jackie against Helen's wishes (and Ron's position) and having to choose between its duties of loyalties and confidentiality owed to each, perhaps to the benefit of its current client, Jackie, and to the detriment of Helen and Ron. For example, if Arnold & Porter had information that Helen actually intended to leave a more

---

[4] Ron requests that we take judicial notice of evidence that supports his allegations of a potential or actual conflict. He acknowledges these documents were not yet available at the time the trial court issued its order on his motion to disqualify. Because these documents were not presented below and are unnecessary to resolution of the issues presented in this appeal, we deny his request for judicial notice. (*Arce v. Kaiser Foundation Health Plan* (2010) 181 Cal.App.4th 471, 483, fn. 5 [documents that were not before the trial court are not proper subjects of judicial notice]; *Gbur v. Cohen* (1979) 93 Cal.App.3d 296, 301 [courts will take judicial notice of only relevant information].)

significant estate to Ron, or that she did not intend for Sanford to transfer funds from her sub-trusts to the Survivor's Trust after her death, the firm would be in the difficult position of having to choose between its duties of loyalty to uphold Helen's testamentary wishes or to defend Jackie against Ron's action.[5]

Finally, Arnold & Porter, through Richardson, has also taken on the role of trustee for Ron's $3 million trust, even though this creates a fiduciary relationship between the firm and Ron, and despite the fact that Ron is required to divulge personal/confidential information about himself in order to receive any of the funds, which are to be distributed only for medical and financial exigencies. (*See, e.g., Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 905 [there is a fiduciary relationship, the duty of loyalty of which is the most important, between a trustee and a beneficiary]; *Morales v. Field, De Goff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307, 316 [same]). As noted, Richardson refused to step down from this role when requested and Arnold & Porter informed Ron of its intent to seek attorney fees from Ron if he continued in his efforts to have Richardson removed. Under the circumstances of this case, and in light of the additional fact that Richardson is a crucial witness in this action,[6] the trial court was well within its discretion in granting Ron's motion to disqualify.

---

[5] We note the firm has an additional interest in this case—to defend Ron's attack against the firm, i.e., that Richardson assisted Sanford and Jackie in thwarting Helen's wishes after her death. Although Richardson and Arnold & Porter have not been named as defendants, the fact that they could be, and that they were heavily involved in drafting all of the trust documents that are being challenged in this case would undoubtedly cause them to try to defend their own actions.

[6] While perhaps not dispositive on its own, we note the trial court could have properly considered the fact that Arnold & Porter, through Richardson, is both a key witness and advocate in the action. (See *Kennedy v. Eldridge*

Defendants argue the trial court erred in disqualifying Arnold & Porter because Ron lacked standing, as he is not a current or former client on the firm. We reject this argument. "Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney. [Citation.]" (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356.) However, "no California case has held that only a client or former client may bring a disqualification motion. The reason is simple: ' " 'A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." ' " ' " (*Kennedy v. Eldridge*, *supra*, 201 Cal.App.4th at p. 1204.) Thus, " 'where the ethical breach is " ' "manifest and glaring" ' " and so " 'infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims' [citation], a nonclient might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation." [Citation.]' " (*Ibid.*) "Case law abounds with examples of orders disqualifying counsel that have not been the product of motions by present or former clients." (*Ibid.*, *citing, e.g., Meza v. H. Muehlstein & Co., Inc.* (2009) 176 Cal.App.4th 969, 980–981 [law firm disqualified after it employed an attorney who was privy to an

---

(2011) 201 Cal.App.4th 1197, 1200, 1202 [disqualification proper where it was likely the attorney would provide important testimony in addition to serving as counsel]; *People v. Donaldson* (2001) 93 Cal.App.4th 916, 927–928 ["opposing counsel may be handicapped in challenging the credibility of the lawyer [as a witness] when the lawyer also appears as an advocate in the case].)

adversary's privileged work product information]; *Woods v. Superior Court* (1983) 149 Cal.App.3d 931, 937 [disqualification of husband's attorney was proper in a divorce action where the attorney formerly represented the family business].) "It makes no sense for a court to stand idly by and permit conflicted counsel to participate in a case merely because neither a client nor former client has brought a motion. As one court put it, 'Protection of the attorney-client privilege is not the *only* ground for a motion to disqualify an attorney.' [Citation.] '[T]he court has an *independent interest* in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them.' [Citation.] Accordingly, . . . where an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel." (*Kennedy v. Eldridge, supra*, 201 Cal.App.4th at pp. 1204–1205.)

Here, Arnold & Porter's disqualification was proper due to its heavy involvement in the dispute as former or current counsel for most of the key players, as trustee to Ron's $3 million trust, and as potential defendants, among other roles. It is a case in which the "manifest and glaring" nature of the potential for conflict and breach of fiduciary duties and duties of loyalty is likely to impact Ron's right to a fair determination of his claims. He therefore has an interest in having the law firm removed, and standing to bring the motion. At the same time, the trial court has an interest in preserving the public's trust in the administration of justice and upholding the integrity of the bar by not allowing a law firm, which has so many potential or actual conflicts as a result of the multiple roles it has played over

15

the years, to continue to represent any parties in this action. It therefore had an independent interest in having Arnold & Porter removed as counsel.

Defendants further argue the order must be reversed because the trial court failed to state its findings on the record, and because some of the statements it made—e.g., that Sullivan & Cromwell can adequately defend Jackie—show it considered improper factors in reaching its decision. We disagree. When ruling on a disqualification motion, the court must indicate on the record that it has considered all appropriate factors and must give its factual findings in support of the required balancing process. (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 578; *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, 482-483.) Even where the record demonstrates the court's reasoning was unsound, however, the ruling will be affirmed so long as it can be supported by any legal theory. (*Day v. Alta Bates Med. Ctr.* (2002) 98 Cal.App.4th 243, 252, fn.1.)

Here, the record shows the trial court considered the appropriate factors and balanced defendants' interests against public policy concerns such as upholding the integrity of the judicial process. For example, the court noted that a party's right to choice in counsel is "an important interest." The court's statements regarding Sullivan & Cromwell's ability to adequately represent defendants show the court considered another relevant factor—the potential for prejudice to defendants in the event Arnold & Porter is removed as counsel. (*SpeeDee Oil, supra*, 20 Cal.4th at p. 1144 [burden on client to replace disqualified counsel is proper consideration].) The record shows the court then balanced those interests against its "duty to ensure the integrity of the proceedings," highlighting Arnold & Porter's extensive involvement in the case of "not only drafting a lot of the documents," but also working closely with Sanford and Jackie after Helen's death.

16

In any event, defendants do not claim the trial court's decision would have been different had it made more specific findings, nor do they point to any evidence to show the result would have been more favorable to them. (Cal. Const., Art. VI, section 13; Code Civ. Proc., § 475 [reversal only if "a different result would have been probable"].)  On appeal, the appellants have the burden of showing not only that the trial court erred, but also that in the absence of the error, " 'it is reasonably probable that a result more favorable to the appealing party would have been reached.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)  Defendants have made no such showing.

## DISPOSITION

The trial court's June 11, 2019 order granting Ron's motion to disqualify Arnold & Porter is affirmed.  Ron's request for judicial notice is denied.  Ron shall recover his costs on appeal.

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Jackson, J.

*Diller v. Safier et al./A157698*

18