Filed 8/9/23  The Dyer Law Firm v. Nelson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE DYER LAW FIRM,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>MARK S. NELSON et al.,<br><br>     Defendants and Respondents. | F085152<br><br>(Super. Ct. No. CV-21-000300)<br><br><br>**OPINION** |

---

APPEAL from an order of the Superior Court of Stanislaus County.  John D. Freeland, Judge.

The Dyer Law Firm, Michael J. Dyer and Dustin J. Dyer for Plaintiff and Appellant.

Radoslovich | Shapiro and Nicholas S. Seliger for Defendant and Respondent Mark S. Nelson.

Law Offices of Mayol & Barringer and Bart Barringer for Defendants and Respondents Karla Sam-Sin and Fernando Sam-Sim.

-ooOoo-

Plaintiff The Dyer Law Firm (the Firm) appeals the trial court's order disqualifying its two attorneys—the principals and sole shareholders of the Firm—from continuing to represent the Firm in its fraud and breach-of-contract action against two former clients and another attorney. The Firm argues the trial court abused its discretion by disqualifying its attorneys under the advocate-witness rule from all further phases of the litigation, which has not yet reached the trial phase. We hold the trial court acted within its discretion in disqualifying the Firm's attorneys from representing the Firm at trial because they will likely be called as witnesses, carrying a significant risk of juror confusion and prejudice to the defendants. However, the trial court abused its discretion by disqualifying the Firm's attorneys from representing the Firm in all *pretrial* phases of the litigation without making any findings as to how their continued behind-the-scenes activities preceding trial would undermine the purposes of the advocate-witness rule. We therefore affirm in part and reverse in part.

## BACKGROUND

**Overview of the Litigation**

According to the operative complaint, the Firm is a corporation doing business in California. The Firm has exactly two attorneys: Michael J. Dyer and Dustin J. Dyer, a father-and-son team (collectively, the Dyers), who are also the sole shareholders and officers of the Firm. In January 2021, the Firm filed the present action—through the Dyers as its attorneys of record—against three defendants: Karla Sam-Sin and Fernando Sam-Sin (collectively, the Sam-Sins) and Mark Nelson. The Sam-Sins are former clients of the Firm, who allegedly failed to fully pay the Firm for legal services provided from 2014 to 2019.

The nature of the prior representation is unclear from the complaint, but Dustin Dyer explained at oral argument that the Firm had represented the Sam-Sins in a business dispute and in a related matter involving the disposition of a house. The Firm's present action seeks to recover legal fees and punitive damages based on the dual theories that

2.

(1) the Sam-Sins failed to pay for legal services provided under their fee agreement with the Firm, and (2) the Sam-Sins and Nelson defrauded the Firm into changing the language of the fee agreement to not charge for the portion of the representation related to the house if a certain outcome was obtained. The pleadings do not specify who Nelson is, but the record shows that he is an attorney with his own law office and that he represented a third party in the Sam-Sins' matter, causing him to speak with the Dyers several times throughout the prior litigation. When the Firm filed the present case, Nelson became counsel for himself and the Sam-Sins, and he continued in that role for close to two years.

The presently operative first amended complaint asserts four causes of action: a claim for breach of contract and a claim for open book account against the Sam-Sins; a claim for fraud against the Sam-Sins and Nelson (collectively, defendants); and a claim for intentional interference with contractual relations against Nelson. The fraud claim holds the most relevance to the present appeal.

For the fraud claim, the Firm alleges—as it did in the original complaint—that defendants "identified to [the Firm]" that the Sam-Sins' prior counsel, one Frederick Smith, had performed services regarding the house portion of the Sam-Sins' litigation for free, when defendants knew Smith had actually agreed to perform that work for an hourly fee and knowingly concealed Smith's fee agreement in order to induce the Firm to accept the Sam-Sins' proposed changes to their fee agreement with the Firm. The Firm alleges that Nelson, "on multiple occasions, stated to [the Firm] that he spoke with Frederick Smith, and Mr. Smith told him he was doing the 'house' portion of the litigation for free." From other portions of the record, it appears the Firm's fraud claim is that the Dyers believed they were mirroring the Smith fee agreement by not necessarily charging for work on the house portion of the litigation, based on defendants' false representations.

Over the course of 2022, the parties deposed Michael Dyer and each of the three defendants. The depositions were videotaped. Michael Dyer's deposition occurred in

3.

February 2022, via video conference. Dustin Dyer defended his father's deposition, with Nelson appearing as counsel for defendants. Next, the Sam-Sins sat for their depositions in June 2022, where the Dyers acted as counsel for the Firm, and Nelson acted as counsel for the Sam-Sins. Finally, in August 2022, Nelson appeared for his deposition, which was taken by Dustin Dyer and defended by an associate attorney at Nelson's firm.

In July 2022, after the Sam-Sin depositions, Nelson substituted out as counsel for the Sam-Sins, who then began representing themselves for a time.[1] In August 2022, the Firm made its initial disclosure of expert witnesses, listing the Dyers as its non-retained experts. Soon after, the trial court granted the Sam-Sins' motion for a continuance and vacated the trial date previously set for October 25, 2022. No trial date has since been reset.

On September 8, 2022, about a week after his deposition, Nelson stopped representing himself and retained counsel. The following day, Nelson's attorney emailed Dustin Dyer, advising that he intended to move to disqualify the Dyers as counsel based on a belief that their continued representation of the Firm would violate rule 3.7 of the Rules of Professional Conduct (Rule 3.7), commonly known as the "advocate-witness rule." When the Dyers declined to withdraw voluntarily, Nelson's attorney filed the disqualification motion that led to this appeal.

**Disqualification Motion**

Nelson's notice of motion sought "an order disqualifying Michael J. Dyer and Dustin J. Dyer from representing themselves in this matter because their serving concurrently in four separate roles as plaintiffs, prosecuting attorneys, critical percipient witnesses and expert witnesses violates … Rule 3.7, the advocate-witness rule."[2]

---

[1]  The Sam-Sins have since obtained new counsel.

[2]  Throughout the briefing below and on appeal, Nelson represents that one of the Dyers' roles in this action is that of plaintiffs. This is not accurate. The Dyers are the Firm's agents and officers, but the sole plaintiff is the Firm, a separate legal entity from its shareholders.

Nelson's accompanying brief repeated this request, arguing that the Rule 3.7 violation was "revealed" during Michael Dyer's February 2022 deposition. Nelson's counsel attached to his supporting declaration a portion of Michael Dyer's deposition testimony in which Michael Dyer testified that at least one of Nelson's fraudulent statements occurred during a telephone call between the Dyers, the Sam-Sins (their clients), and Nelson. According to Michael Dyer, the Sam-Sins conferenced Nelson into the call, and Nelson confirmed that Smith (the Sam-Sins' former counsel) had been providing services for the house portion of the litigation for free. Nelson argued the Dyers were therefore critical percipient witnesses regarding the fraud claim against Nelson, and with their additional designation as expert witnesses, their simultaneous service as attorneys would "cause detriment to all [d]efendants and to judicial integrity and [would] cause significant jury confusion at trial."

The Firm opposed the disqualification motion, arguing (as relevant here) that (i) there was no Rule 3.7 violation because the Firm provided informed written consent pursuant to Rule 3.7(a)(3); (ii) the motion was brought purely as a litigation tactic, given that Nelson, himself, had also been violating the advocate-witness rule until retaining counsel just before filing the motion; (iii) Nelson impliedly waived his right to bring the motion by waiting over one and one-half years to object to the Dyers' representation of the Firm; and (iv) any concern about jury confusion at trial did not provide a basis for the Dyers to be disqualified from conducting pretrial matters.

**Motion Hearing and Trial Court Ruling**

The trial court issued a tentative ruling granting Nelson's disqualification motion, which it confirmed without changes after a hearing. The substantive portion of the trial court's ruling reads as follows:

> "The Court finds that [Nelson] has convincingly demonstrated that the multiple roles anticipated to be filled by the Dyers in connection with the trial of this matter carry an impermissible probability of misleading the trier of fact and prejudice to the opposing parties. In view of the Dyers'

5.

intention to appear at trial in the capacities of representatives/officers of the [Firm], counsel for [the Firm], percipient witnesses on essential disputed issues, and non-retained expert witnesses on behalf of [the Firm], the Court has concluded that the informed-consent exception contained in [Rule] 3.7 is inapplicable under the circumstances, due to the risk of prejudice to the defendants and to the integrity of the judicial process.

"In reaching this conclusion, the Court has weighed the evidence presented and has considered the countervailing interests at issue, including the [Firm]'s right to be represented by its counsel of choice, as well as the Dyers' right to represent their own interests as officers of [the Firm] and as attorneys. However, the Court is persuaded that a significant danger exists for inappropriate weight to be assigned to the Dyers' testimony, both as percipient and expert witnesses, based on argument in their roles as counsel. As a result, allowing the Dyers to proceed in these anticipated roles carries a strong likelihood of detriment to the interests of the defense as well as the integrity of the judicial process. Therefore, it is the Court's conclusion that these considerations outweigh [the Firm]'s above-described rights, particularly in view of the fact that the Court received no specific evidence demonstrating that disqualification would place an undue burden on [the Firm] in retaining new counsel to represent its interests at trial."

At the hearing, Dustin Dyer (representing the Firm) asked the court to clarify whether the disqualification was meant to be effective immediately or only effective for purposes of trial. The court responded, "Well, it would be now." Dustin Dyer then argued that the tentative ruling failed to provide any reason for disqualifying himself and his father from acting as the Firm's attorneys in the remaining pretrial motions, discovery, or other pretrial activities that would not be seen by the jury. He noted that all depositions had already been conducted, except for his own, as to which he proposed using a different attorney to defend him. Dustin Dyer also reiterated the Firm's argument from its opposition briefing that Nelson was bringing this motion for purely tactical purposes. After hearing rebuttal from Nelson's counsel, the trial court confirmed its

tentative ruling and, at the Firm's request, stayed all motions and discovery. This appeal followed.[3]

## DISCUSSION

### I.  Standard of Review

An order on a motion to disqualify counsel is directly appealable.[4] (*Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113, 128; *Banning Ranch Conservancy v. Superior Court*, *supra*, 193 Cal.App.4th at p. 918.) " ' "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion." ' [Citation.] Under this standard, the trial court's legal conclusions are reviewed de novo, but its factual findings are reviewed only for the existence of substantial evidence supporting them, and its ' "application of the law to the facts is reversible only if arbitrary and capricious." ' " (*Doe v. Yim* (2020) 55 Cal.App.5th 573, 581 (*Yim*).) As to disputed factual issues, our role is simply to determine whether substantial evidence supports the trial court's findings of fact, without substituting our judgment for the trial court's express or implied factual findings that are supported by substantial evidence. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*).) In the absence of material disputed factual issues, however, we review the trial court's determination as a question of law. (*Id.* at p. 1144.) And "a disposition that rests on an error of law constitutes an abuse of discretion." (*Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1092.) "In any event, a disqualification motion involves concerns

---

[3]    On appeal, the Dyers continue to represent the Firm. Nelson filed a response brief through his counsel, which the Sam-Sins (through their own counsel) have joined without filing a separate brief.

[4]    An order disqualifying an attorney is also amenable to extraordinary writ review, and writ petitions generally offer a speedier route for review of such orders. (*Banning Ranch Conservancy v. Superior Court* (2011) 193 Cal.App.4th 903, 918–919; see *URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 887, fn.10 ["Writ petitions are almost always a better vehicle for resolving challenges to attorney disqualification orders."].)

7.

that justify careful review of the trial court's exercise of discretion." (*SpeeDee Oil*, at p. 1144.)

## II.    Analysis

The Firm argues that the trial court abused its discretion in several respects:  (1) by failing to consider whether the motion to disqualify was brought for purely tactical reasons; (2) by disqualifying the Dyers from representing the Firm in all phases of the litigation without explaining the need to preclude them from further pretrial activities; and (3) by granting relief not requested in Nelson's notice of motion.  Related to the first argument, the Firm also contends Nelson waived the right to seek disqualification by unreasonably delaying the filing of his motion.  Finally, the Firm offers a policy argument that the disqualification order impermissibly bars all corporate counsel from representing their corporations, infringing the right of self-representation.  We reject most of these arguments but agree it was an abuse of discretion to categorically disqualify the Dyers from all further pretrial activities.

### A.  The advocate-witness rule and its rationales.

"A trial court's authority to disqualify an attorney derives from its inherent power, codified at Code of Civil Procedure section 128, subdivision (a)(5), to control the conduct of its ministerial officers and of all other persons connected with its proceedings in furtherance of justice.  [Citation.]  Disqualification may be ordered as a prophylactic measure against a prospective ethical violation likely to have a substantial continuing effect on future proceedings." (*Yim*, *supra*, 55 Cal.App.5th at p. 581.)  The only professional ethics issue giving rise to the present disqualification order was the Dyers' performance of dual roles as both advocates and witnesses, which Rule 3.7 discourages.[5]

---

[5]    As discussed below, we disregard defendants' newly offered ground for disqualification based on the Dyers' purported acquisition of confidential information from their prior representation of the Sam-Sins.

8.

Rule 3.7 provides: "A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained informed written consent from the client." (Rule 3.7(a), fn. omitted.) As clarified in the comments to the rule, the informed-consent exception does not override a trial court's inherent discretion to order disqualification when necessary. "Notwithstanding a client's informed written consent, courts retain discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced." (*Id.*, com. 3, asterisk omitted.) The general standard is that a court "retains discretion to disqualify a likely advocate-witness as counsel, notwithstanding client consent, where there is 'a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process.' " (*Yim*, *supra*, 55 Cal.App.5th at p. 582, quoting *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, 482.)

Avoiding unfairness to adversaries and protecting the integrity of the judicial system are two of the central rationales for Rule 3.7's advocate-witness rule. If an attorney serves both as advocate and witness in a trial, "the jury may have difficulty keeping properly segregated the arguments of the attorney acting as advocate and his testimony as a witness." (*People ex rel. Younger v. Superior Court* (1978) 86 Cal.App.3d 180, 197.) " 'The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.' " (*People v. Donaldson* (2001) 93 Cal.App.4th 916, 928 (*Donaldson*).) Thus, one purpose of Rule 3.7 is "to prevent fact finder confusion regarding whether an advocate-witness's statement is to be considered proof or argument." (*Yim*, *supra*, 55 Cal.App.5th at p. 582.) Maintaining clear lines of separation between evidence and

9.

argument is key to maintaining the integrity of the judicial system, as it helps to ensure the jury reaches its decision based on actual evidence.

Another, related purpose of the rule is to avoid the risk of " 'the jurors' tying [counsel's] persuasiveness as an advocate to his credibility as a witness.' " (*Yim*, *supra*, 55 Cal.App.5th at p. 582.) Depending on the skill of the attorney and the strength of the case, this might help or hurt the attorney-witness's client.[6] But it will certainly disadvantage the opposing party if an attorney gives testimony on a "*key issue* in the case on which there is conflicting testimony, and the attorney then proposes to argue to the jury why his or her testimony is more credible than the conflicting evidence." (Tuft et al., Cal. Practice Guide: Professional Responsibility & Liability (The Rutter Group 2022) ¶ 8:378, p. 8-99; see *Donaldson*, *supra*, 93 Cal.App.4th at p. 928 [" 'the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case' "].) This detriment to the opponent, in turn, endangers the integrity of the judicial system by creating an uneven playing field.

**B. The advocate-witness rule applies to incorporated law firms.**

Before analyzing the trial court's treatment of the Rule 3.7 issue, we first wish to clarify that the close relationship between the Dyers and the Firm does not take this case beyond the ambit of Rule 3.7's advocate-witness rule. We acknowledge this case does not present the typical Rule 3.7 scenario where a disinterested attorney is representing a client in pursuit of the client's totally separate interests. In the practical sense, the Dyers are the Firm, since the Firm cannot act other than through its officers and agents. Nevertheless, in the legal sense, an incorporated entity like the Firm " 'is a distinct legal

---

[6] Thus, a third rationale for the advocate-witness rule is to ensure clients receive effective advocacy from their attorneys and effective testimony from their witnesses. (See *Comden v. Superior Court* (1978) 20 Cal.3d 906, 912 ["An attorney who attempts to be both advocate and witness impairs his credibility as witness and diminishes his effectiveness as advocate."]; see also *Donaldson*, *supra*, 93 Cal.App.4th at p. 928 [" 'If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness.' "]. However, Rule 3.7's informed-consent exception allows clients to weigh this risk for themselves.

entity separate from its stockholders and from its officers.' " (*Merco Constr. Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724, 729.)  As the Dyers themselves acknowledge in the Firm's opening brief, even in this scenario, they "are not representing their own individual interest but instead the interests of the corporation which they own." (See *La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773, 784 ["[i]n representing a corporation, an attorney's client is the corporate entity, not individual shareholders or directors"].)

Therefore, this is not a matter of the Dyers representing themselves, as Nelson often puts it; nor is this a matter of the Firm representing itself, as the Dyers sometimes frame it.  Despite the Firm being a closely held corporation owned and directed exclusively by the Dyers, this is still a case with a client (the Firm) being represented by counsel (the Dyers).  This is not a case of self-representation.

The distinction matters because, if the Dyers were truly representing themselves in propria persona, there would be a good argument that the advocate-witness rule would not apply.  Various appellate courts around the country—though none in California, to our knowledge—have held that a "lawyer-litigant" has a right to appear pro se and should not be disqualified from doing so under the advocate-witness rule.  (See, e.g., *Rosenthal Furs, Inc. v. Fine* (2022) 282 N.C.App. 530 [871 S.E.2d 153, 159–160] [addressing rule 3.7 of the North Carolina Rules of Professional Conduct, and citing cases holding the same in Louisiana, South Carolina, and Utah]; *Presnick v. Esposito* (1986) 8 Conn.App. 364 [513 A.2d 165, 167] [holding none of the reasons for the advocate-witness rule applies "where the attorney seeks only to represent himself in his own case"].)[7]

---

[7]    Each of the cited cases address their own state's version of Rule 3.7, all modeled after rule 3.7 of the American Bar Association Model Rules of Professional Conduct, which do not contain an informed-consent exception like California's Rule 3.7.  We do not see why our state's informed-consent exception would lead to a different result, but we need not decide the matter in this case.

11.

As courts across the country also recognize, however, a corporation is not a "lawyer-litigant" with the same right to self-representation. (See *Harris & Hilton, P.A. v. Rassette* (2017) 252 N.C.App. 280 [798 S.E.2d 154, 157] ["It is well established that an entity such as [the incorporated law firm plaintiff] Harris & Hilton is treated differently under North Carolina law than a *pro se* litigant."]; *Premium Products, Inc. v. Pro Performance Sports, LLC* (E.D.Va. 2014) 997 F.Supp.2d 433, 434, 436 [holding a corporation's sole owner, officer, and patent attorney was not a "lawyer-witness-litigant" in a patent infringement action filed by the corporation; and the attorney's representation of the corporation "implicates all of the concerns animating the witness-advocate rule"]; *Mt. Rushmore Broadcasting, Inc. v. Statewide Collections* (Wyo. 2002) 42 P.3d 478 [affirming a trial court's decision precluding the plaintiff corporation's attorney (its sole shareholder and officer) from testifying as a fact witness at trial due to advocate-witness concerns].)[8]  Indeed, a corporation *cannot* represent itself. (See *Merco Constr. Engineers, Inc. v. Municipal Court*, *supra*, 21 Cal.3d at p. 731 ["a corporation not itself being a natural person, can make a court appearance only through a natural person"]; *Gutierrez v. G & M Oil Co., Inc.* (2010) 184 Cal.App.4th 551, 564 ["unlike an attorney who represents himself [citation], a corporation *must* be represented in court by an attorney"]; *Paradise v. Nowlin* (1948) 86 Cal.App.2d 897, 898.)  Thus, even when the corporation is a law firm being represented by its own shareholder attorneys, the advocate-witness rule remains in play if those shareholder attorneys are also serving as witnesses on the firm's behalf as to disputed issues of fact. (See *Harris & Hilton, P.A.*, at p. 284; cf. *Premium Products, Inc.*, at p. 437 ["The proposition that a corporation has no right to pro se representation holds just as true for small, closely-held plaintiffs as for

---

**8**     At least one state's high court has held to the contrary (see *National Child Care, Inc. v. Dickinson* (Iowa 1989) 446 N.W.2d 810, 811–812), but we are not persuaded by that decision's conclusory holding that a sole shareholder representing his corporation does not present the usual dangers of harm to the opponent and to the integrity of the judicial process.

Fortune 500 plaintiffs."].)  That being the case here, we proceed to review the trial court's application of Rule 3.7 to disqualify the Dyers for all purposes.

**C. The trial court did not abuse its discretion in disqualifying the Dyers from representing the Firm at trial.**

"In exercising its discretion to disqualify counsel under the advocate-witness rule, a court must consider:  (1) ' " 'whether counsel's testimony is, in fact, genuinely needed' " '; (2) 'the possibility [opposing] counsel is using the motion to disqualify for purely tactical reasons'; and (3) 'the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case.' " (*Yim*, *supra*, 55 Cal.App.5th at p. 583; see *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 580–581 (*Smith*) [establishing factors]; cf. *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145 [noting that, depending on the circumstances, a disqualification motion may involve considerations like "a client's right to chosen counsel," "the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion"].)  "[T]rial judges must indicate on the record they have considered the appropriate factors and make specific findings of fact when weighing the conflicting interests involved in [disqualification] motions." (*Smith*, at p. 582; see *Yim*, at p. 584.)

*1. The trial court adequately considered the possibility of the motion being filed for purely tactical reasons.*

Regarding the first of the disqualification factors, the Firm does not dispute that the Dyers will both be necessary witnesses at trial or that their testimony will encompass material, disputed issues of fact at least as to their fraud claims against all three defendants.  Michael Dyer's deposition testimony reflects that he and his son are the only plaintiff-friendly witnesses to Nelson's alleged misrepresentation on the conference call with the Sam-Sins, as the Dyers were the only ones on that call besides defendants.  They

13.

will also likely be the best positioned to testify regarding the other occasions when defendants allegedly misrepresented the nature of Smith's fee agreement when speaking *to the Dyers*—and regarding the Sam-Sins' failure to fully pay the Firm's fees for purposes of the breach of contract and open book account claims.

Rather, the Firm argues the trial court abused its discretion by failing to consider the second factor: the possibility Nelson brought the motion for purely tactical reasons. The Firm objects to the lack of "any indication" from the trial court's minute order or participation in oral argument that it considered the motion's tactical basis. Although the Firm is correct that the disqualification order did not expressly state the trial court had considered the possibility of tactical abuse, the order still reflects the trial court's implied consideration and rejection of this possibility. The court stated it had "weighed the evidence presented and ha[d] considered the countervailing interests at issue," including the Firm's right to its choice of counsel and the Dyers' interests as the Firm's officers; and the court concluded that these interests were "outweigh[ed]" by "a significant danger … for inappropriate weight to be assigned to the Dyers' testimony," which would very likely pose a "detriment to the interests of the defense as well as the integrity of the judicial process."

In *Yim*, the Court of Appeal rejected a similar contention that a trial court's statement of decision did not reflect proper consideration of all the disqualification factors. As to the second factor, the Court of Appeal reasoned that, "in concluding that [the attorney]'s dual role would prejudice [the opposing party], the court impliedly considered and rejected the possibility that [the opposing party] sought to disqualify [the attorney] for purely tactical reasons." (*Yim*, *supra*, 55 Cal.App.5th at p. 585.) Here, the trial court's express finding that the Dyers' anticipated dual roles would work a "detriment" to defendants' interests (i.e., prejudice defendants) likewise demonstrates the court's determination that Nelson was not bringing the motion for purely tactical reasons. In addition, the court cannot have failed to consider this factor given Dustin Dyer's

14.

emphatic arguments at the motion hearing that the motion was tactically motivated. (See *Hetos Investments, Ltd. v. Kurtin* (2003) 110 Cal.App.4th 36, 51 [holding that an oral argument colloquy demonstrated the trial court considered counsel's arguments and thus distinguished the case from *Smith*, *supra*, 60 Cal.App.4th 573, where there was no indication the court had considered appropriate factors].)

There was no need for the trial court to make further "specific findings of fact when weighing the conflicting interests involved" in the disqualification motion (*Smith*, *supra*, 60 Cal.App.4th at p. 582) because "the material facts before the court were effectively undisputed" (*Yim*, *supra*, 55 Cal.App.5th at p. 585). The parties certainly took differing positions on when Nelson realized, or should have realized, the Dyers would be necessary witnesses and on the implications of the timing of his disqualification motion, but there was no disagreement on the facts (i.e., who did what, and when). (See *Hetos Investments, Ltd. v. Kurtin*, *supra*, 110 Cal.App.4th at pp. 49–51 [rejecting appellant's contention that the trial court failed to make the required " 'specific findings of fact when weighing the conflicting interests,' " where there were no material factual disputes].)

The Firm argues that the motion must have been brought as a litigation tactic because (i) despite knowing of their likely dual roles, Nelson did not object to the Dyers' representation for almost two years, including while they were taking and defending depositions; (ii) defendants, themselves, had long benefited from being represented by Nelson whose services also implicated the advocate-witness rule; and (iii) Nelson moved to disqualify almost immediately after retaining counsel for himself. We do not doubt that the timing of Nelson's motion was a tactical choice, possibly informed by defendants' mutual desire to avoid the expense of retaining independent counsel earlier in the litigation. And the failure to seek disqualification for seven months following the purportedly revelatory Michael Dyer deposition suggests to some extent that the Dyers' advocate-witness issue "was not seen as serious or substantial by the moving party."

15.

(*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 847 (*Liberty*).)

However, none of this means that the only reasonable conclusion to be drawn is that Nelson was using the motion for "purely tactical reasons." (*Smith*, *supra*, 60 Cal.App.4th at p. 581; see *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1124 [under the abuse of discretion standard, we will not set aside the trial court's decision as long as there exists a reasonable or even fairly debatable justification for it].)  Indeed, in this particular scenario where the Firm has not had to pay for outside counsel and will retain the Dyers' knowledge of the case even with a shift to new counsel at trial, the delay in seeking the Dyers' disqualification can also be seen as having *benefitted* the Firm.  Had Nelson moved to disqualify the Dyers from the very beginning (and been successful), the Firm would have had to pay outside counsel for the two years of litigation services it received for free.[9]

In any event, even assuming a tactical advantage for defendants, Nelson's motion to disqualify clearly has merit with respect to protecting the integrity of the judicial process at the forthcoming trial.  The trial court reasonably concluded that having the Dyers serve as both attorneys and witnesses at trial carries an unnecessary risk of confusing the jury and biasing the jury, particularly with respect to any argument one of the Dyers might make as counsel regarding his own testimony as a witness.  It is undisputed that the Dyers will be testifying on key issues in the case (such as, what statements defendants made and how they were false) and that defendants will be giving conflicting testimony on those issues (presumably, that they never made those statements).  In a case like this where the jury's decision will hinge on witness credibility, it is not an abuse of discretion to disqualify a counselor whose participation in dual roles

---

[9]     At oral argument, Dustin Dyer acknowledged that all of the parties "saved a significant amount of money" by having their case initially litigated by attorneys who were also participants in the case.

16.

might unfairly tip the credibility balance. (See Tuft et al., Cal. Practice Guide: Professional Responsibility & Liability, *supra*, ¶ 8:378, p. 8-99 [detriment to opposing party or judicial integrity "may be claimed where the attorney's testimony is on the *key issue* in the case on which there is conflicting testimony, and the attorney then proposes to argue to the jury why his or her testimony is more credible than the conflicting evidence"].) Thus, the motion was not necessarily brought for *purely* tactical reasons. (See *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 599 ["Even if tactical advantages attend the motion or disqualification, that alone does not justify denying an otherwise meritorious motion."].) The trial court acted within its discretion in disqualifying the Dyers as trial counsel, notwithstanding the Firm's consent, because there was a " 'convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process.' " (*Yim*, *supra*, 55 Cal.App.5th at p. 582.)

Finally, the above analysis also undermines the Dyers' related argument that it was too late in the litigation for the trial court to "un-ring the bell" of possible juror confusion because of the four depositions already conducted with the Dyers and Nelson acting as counsel for the respective parties. Even if video of these depositions is shown at trial, as the Firm says is likely, there still remains a compelling interest in eliminating the prospective harm of jury confusion and bias arising from the Dyers performing dual roles at the trial itself.[10]

---

**10** We are unpersuaded by the Firm's finger-pointing at Nelson for having, himself, ostensibly served in dual advocate-witness roles during the depositions taken thus far. First, for the reasons discussed at the outset, Nelson's representation of *himself* as a "lawyer-litigant" likely would not provide grounds for disqualification under the advocate-witness rule. And second, it is not clear to what extent Nelson actively participated in any of the depositions as an attorney. He acted only as a *witness* at his own deposition; and although the Firm argues that he "acted as counsel" at each of the other depositions, we are not told whether or how frequently he appeared on video or in the transcripts of the Sam-Sin or Dyer depositions—so as to assess the level of possible resultant jury confusion. The only deposition transcript excerpts in the record reflect that Michael Dyer was questioned by one Angelica Anguiano, an attorney at her own firm who, for a time, associated in as counsel for defendants.

When reviewing for abuse of discretion, "[w]e may not substitute our judgment for that of the trial court, and provided the trial court properly applied the law, we may reverse the trial court's exercise of its discretion only when the facts required the trial court to reach a different result." (*McDermott Will & Emery LLP v. Superior Court*, *supra*, 10 Cal.App.5th at p. 1124.) The facts related to the tactical motivation factor do not require a different outcome here with respect to the Dyers' disqualification from representing the Firm at trial.

Contrary to the Firm's policy objection, affirming the trial court's order in this regard does not effectively bar "all corporate counsel … from representing their corporation." Our decision only implicates corporate counsel *who are necessary witnesses* to their corporation's claims, and trial courts in future cases might reasonably balance the advocate-witness interests differently than did the trial court here.[11] In any case, as explained in our opening discussion, corporations do not enjoy a right to self-representation.[12]

### 2. *Nelson's delay in seeking disqualification was not an implied waiver.*

The Firm argues Nelson's delay in filing the disqualification motion not only showed tactical abuse but also constituted an implied waiver of the right to seek the Dyers' disqualification.[13] "[A]ttorney disqualification can be impliedly waived by failing to bring the motion in a timely manner." (*Liberty*, *supra*, 194 Cal.App.4th at

---

[11] We decline Nelson's invitation, offered for the first time at oral argument, to impose a rule requiring automatic disqualification for all purposes of counsel who litigate fraud actions against former clients, arising from a prior representation.

[12] The cases the Firm cites for the proposition that law firms are routinely represented by their own lawyers are all decisions regarding the availability of attorney fees after prevailing in a contractual fee collection action. Because they lack any discussion of attorney disqualification, we find these cases inapposite.

[13] We reject defendants' argument that the Firm did not adequately preserve this implied waiver issue for appeal. The Firm expressly argued this same theory in its opposition brief before the trial court.

p. 844.)  "However, to result in a waiver, the 'delay [and] … the prejudice to the opponent must be extreme.' " (*Ontiveros v. Constable* (2016) 245 Cal.App.4th 686, 701 (*Ontiveros*).)  "Factors relevant to the reasonableness of a delay include the 'stage of litigation at which the disqualification motion is made' and the complexity of the case." (*Ibid.*; see *Liberty*, at pp. 846–847.)  " 'If the opposing party makes a prima facie showing of extreme delay and prejudice, the burden then shifts to the moving party to justify the delay.' " (*Ontiveros*, at p. 701.)

Here, the trial court made no finding with respect to whether Nelson waived the right to seek disqualification based on unreasonable delay.  We thus turn to the undisputed evidence in the record to decide the issue ourselves.  It is undisputed that the Firm filed this action, with the Dyers as its attorneys, in January 2021; and that Nelson did not move to disqualify the Dyers until September 2022, about 21 months later.  It is also undisputed that Michael Dyer's testimony at his February 2022 deposition made it clear he and his son would be necessary witnesses at least as to the fraud claim against Nelson; and that this was the testimony Nelson cited as the impetus for his disqualification motion.  Defendants argue the delay was only seven months long (without offering any explanation for that still significant passage of time), while the Firm argues the delay stretched over one and one-half years because it was clear from the initial pleadings that the Dyers would be witnesses to the asserted claims.

The parties also take conflicting positions on what stage the litigation had reached when Nelson moved to disqualify.  (See *Ontiveros*, *supra*, 245 Cal.App.4th at pp. 701–702 ["Although defendants focus on the *age* of the litigation when Ontiveros brought his motion, the proper focus is on the *stage* of the litigation."].)  On the one hand, the pleadings were settled, several rounds of discovery requests had been exchanged, four depositions had occurred, and the default discovery deadline had nearly passed (see Code Civ. Proc., § 2024.020 [discovery to be completed 30 days before date initially set for trial]).  On the other hand, no trial date was set (the court having previously vacated the

19.

original October 2022 trial date), and further discovery and dispositive pretrial motions were still expected—including Dustin Dyer's deposition—even though no case scheduling deadlines had been reset.

We need not decide whether the significant delay in this case was "extreme," however, because we are not convinced that the resulting prejudice was extreme—especially in light of our ruling, *infra*, allowing the Dyers to continue representing the Firm in much of the remaining pretrial litigation. (See *Ontiveros*, *supra*, 245 Cal.App.4th at p. 701 [both delay and prejudice must be extreme]; *Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 490 [declining to consider extreme delay based on lack of evidence demonstrating extreme prejudice as a result of the delay].)

As the trial court noted, the Firm provided no specific evidence of how disqualification would unduly burden it by requiring it to retain trial counsel. The only prejudice the Firm identifies on appeal is (1) being forced to pay new counsel to gain the same level of mastery of the case the Dyers have developed over the past two years, and (2) having to pay for counsel at all. This is not the type of prejudice contemplated by the implied waiver doctrine but rather a recitation of "those client interests implicated by any disqualification motion." (*In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d at p. 600; see *id.* at pp. 599–600 [rejecting the prejudice argument that "clients lost the services of knowledgeable counsel of their choice, and were forced to retain new counsel"].)

The Firm also implies prejudice in that new counsel will be hampered by the fact that discovery is now technically closed, but it appears all parties still require further discovery, and we expect on remand the trial court will exercise its discretion to reopen discovery in setting a new trial date (see Code Civ. Proc., § 2024.050).

We recognize that "the later [a disqualification] motion is made, the more difficult it is to replace counsel." (*Liberty*, *supra*, 194 Cal.App.4th at p. 847.) But this does not

appear to be a particularly complex case, and even though disqualified from trial representation, the Dyers (as officers and agents of the client Firm) will remain fully available to educate and collaborate with the Firm's new outside counsel and share their knowledge gained during discovery—something not every client can necessarily expect when substituting counsel. This was not an eleventh-hour, eve-of-trial motion (nor a midtrial motion, as in *Liberty*, at pp. 842, 846–847). New counsel will have plenty of time to get up to speed, and the Firm will not be duplicating any expenses in the process of replacing counsel because the Dyers had been representing the Firm for free. (See *Smith*, *supra*, 60 Cal.App.4th at p. 580 [noting client's interest "in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case"].)

Absent a prima facie showing of extreme prejudice caused by the delay, there was no waiver of the right to seek disqualification.

### 3. *Nelson's moving papers sufficiently requested the relief granted.*

The Firm lofts one other volley based on the motion itself. It argues that Nelson's moving papers only ever asked the trial court to disqualify the Dyers "from representing themselves," and therefore the court abused its discretion in granting relief not identified in the notice of motion when it disqualified them from representing *the Firm*. Nelson's motion and briefing to the trial court indeed consistently reflected his inaccurate belief that the Dyers were "representing themselves" (and, as noted earlier, that they were plaintiffs). And, in literal terms, Nelson exclusively sought "an order disqualifying Michael J. Dyer and Dustin J. Dyer from *representing themselves* in this matter."

The Firm cites the general rule that, when deciding motions, a trial court "may consider only the grounds stated in the notice of motion." (*Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1125.) However, in the very next line, *Luri* also says, "An omission in the notice may be overlooked if the supporting papers make clear the grounds for the relief sought." (*Ibid.*) *Luri* explains, "The purpose of these requirements is to

21.

cause the moving party to 'sufficiently define the issues for the information and attention of the adverse party and the court.' " (*Ibid.*)

The Firm's opposition brief in the trial court makes clear that the Firm understood Nelson was trying to disqualify the Dyers from representing *the Firm*, notwithstanding the inaccurate framing. In its opposition brief to the trial court, the Firm described the motion as seeking to "disqualify [*the*] *Firm* from representing *itself* in the present litigation." (Italics added.) Although the opposition brief displayed the equally inaccurate view that the Firm was representing *itself* (see *ante*, at p. 11), the brief demonstrates that the Firm nonetheless understood the motion was to disqualify the Dyers in their capacity as representatives of the Firm—not in their personal capacities. This makes sense because the Dyers, as drafters of the complaint and the amended complaint, well knew they were not named plaintiffs—and therefore the motion could not be seeking to disqualify them from representing themselves in the personal sense.

Because there was no confusion about what relief Nelson's motion sought, we reject this argument.

### D. It was an abuse of discretion to disqualify the Dyers from representing the Firm in all pretrial activities.

Although we affirm the trial court's disqualification order insofar as it disqualified the Dyers from serving as counsel for the Firm at trial, we nevertheless reverse in part, because the trial court improperly applied the law by extending that disqualification to *all* pretrial activities without justification. In reaching this conclusion, we rely on two recent decisions by the Second Appellate District, Division Four: *Yim*, *supra*, 55 Cal.App.5th 573 and *Lopez v. Lopez* (2022) 81 Cal.App.5th 412 (*Lopez*).

As the court observed in *Lopez*, "Rule 3.7 is limited on its face to trial." (*Lopez*, *supra*, 81 Cal.App.5th at p. 423.) The rule states, "A lawyer shall not act as an advocate *in a trial* in which the lawyer is likely to be a witness …." (Rule 3.7(a), italics added.) Rule 3.7's use of the term "trial" has been interpreted to also encompass "pretrial

22.

evidentiary hearing[s] at which counsel is likely to testify." (*Yim*, *supra*, 55 Cal.App.5th at p. 583; see *People ex rel. Younger v. Superior Court*, *supra*, 86 Cal.App.3d at p. 193 [interpreting former rule].)  Further, as noted in *Yim*, courts around the country have understood the advocate-witness rule to mean an implicated attorney " 'may not participate in "any pretrial activities which carry the risk of revealing the attorney's dual role to the jury." [Citation.]  In particular, a testifying attorney should not take or defend depositions.' " (*Yim*, at p. 583.)  As one out-of-state court explained, " 'Testimony from an oral deposition could not be easily read into evidence without revealing [counsel's] identity as the attorney taking or defending the deposition.  Videotaped depositions present an even greater concern' .…" (*Ibid.*, quoting *Lowe v. Experian* (D. Kan. 2004) 328 F.Supp.2d 1122, 1127.)

In *Yim*, the Second Appellate District, Division Four (two years before issuing *Lopez*) applied these pretrial advocate-witness principles in a case where an attorney was representing her daughter in suing the attorney's ex-husband for sexual abuse during the prior marriage.  (*Yim*, *supra*, 55 Cal.App.5th at pp. 576–577.)  The Court of Appeal held that the trial court had acted within its discretion in disqualifying the attorney from representing her daughter not only "at trial" but also "in evidentiary hearings at which [the attorney was] likely to testify, and in taking or defending depositions."  (*Id.* at p. 584; see *id.* at pp. 584–586.)  The *Yim* court specifically did not address "whether the advocate-witness rule supported the [trial] court's additionally disqualifying [the attorney] from representing [her daughter] in all other pretrial activities."  (*Id.* at p. 586.)  The court instead rested its affirmance of the *categorical* pretrial disqualification on the "independent ground" of the trial court's finding that the attorney might misuse confidential information she had gained through her long previous marriage to the defendant.  (*Id.* at p. 586.)

When the same court in *Lopez* later reviewed a categorical pretrial disqualification ordered exclusively under the advocate-witness rule—that is, *without* the independent

confidential information ethics concerns that underlay *Yim*—it did not hesitate to reverse. (*Lopez*, *supra*, 81 Cal.App.5th at pp. 415–416, 424, 426.) The *Lopez* court held it was an abuse of discretion to apply the advocate-witness rule to categorically disqualify an attorney from all phases of the litigation without findings as to how such an extension of the rule would further its purpose of avoiding fact finder confusion. (*Id.* at pp. 424–425.) *Lopez* criticized the trial court for "extend[ing] the advocate-witness rule to *all* pretrial activities, including behind-the-scenes activities unlikely to pose any risk of fact finder confusion, such as preparing a witness list or motion in limine. Because [the attorney]'s categorical disqualification from all pretrial activities was not supported by Rule 3.7's text, or by reasoned findings concerning the rule's purpose, [the *Lopez* court] conclude[d] it constituted an abuse of discretion." (*Id.* at pp. 425–426.)

As defendants point out, the *Lopez* court also held the trial court abused its discretion by applying the American Bar Association *Model* Rules of Professional Conduct, rule 3.7, instead of our Rule 3.7 and thereby failing to apply Rule 3.7's informed-consent exception, which does not appear in the model rule. (*Lopez*, *supra*, 81 Cal.App.5th 412 at pp. 424–425.) However, both versions of the rule are limited to advocacy *at trial*. (See *ante*, at p. 22; ABA Model Rules Prof. Conduct, rule 3.7(a) [absent specified exception, "[a] lawyer shall not act as advocate *at a trial* in which the lawyer is likely to be a necessary witness" (italics added)].) And *Lopez* held that the trial court had "*further* abused its discretion" by failing to acknowledge that limitation, in addition to ignoring the informed-consent exception. (*Lopez*, at p. 425, italics added.) Thus, although the trial court here avoided many of the pitfalls noted in *Lopez*, its extension of the disqualification to all pretrial activities without explanation was an abuse of discretion unto itself.

The minute order granting Nelson's disqualification motion discusses only the harms that will come from the Dyers serving multiple roles *at trial*. The trial court found "that the multiple roles anticipated to be filled by the Dyers *in connection with the trial* of

24.

this matter" carried too great a risk of misleading the fact finder and prejudicing defendants. (Italics added.) And it determined the informed-consent exception was overcome by the risks inherent in "the Dyers' intention *to appear at trial* in [multiple] capacities." (Italics added.) Finally, the trial court noted a lack of evidence that "disqualification would place an undue burden on [the Firm] in retaining new counsel to represent its interests *at trial*." (Italics added.) Nowhere does the minute order refer to *pretrial* representation. Nevertheless, the transcript of the hearing on the motion makes clear the trial court was ordering the Dyers' disqualification effective immediately— "now"—even though no trial date has been reset and much pretrial work remains to be done.

Pretrial litigation involves many "behind-the-scenes activities unlikely to pose any risk of fact finder confusion." (*Lopez*, *supra*, 81 Cal.App.5th 412 at p. 425.) Legal work product like written discovery requests for admissions or documents, witness lists, motions in limine, or briefs on dispositive motions does not wind up before the jury with the drafting attorney's name on it. Thus, it is hard to see how it would confuse the fact finder or injure the judicial process for an attorney to participate in such activities (unbeknownst to the jury) and then testify for the client at trial. By contrast, we readily agree with the Second Appellate District and the many other courts that have held it *does* work such harms for a witness-attorney to serve as counsel in specific pretrial activities— such as at evidentiary hearings and taking or defending depositions—which often later come into evidence at trial and therefore " ' "carry the risk of revealing the attorney's dual role to the jury." ' " (*Yim*, *supra*, 55 Cal.App.5th at p. 583.)

In failing to discuss pretrial representation at all, despite making the Dyers' disqualification effective immediately and basing the disqualification purely on Rule 3.7's advocate-witness rule, the trial court abused its discretion. Rule 3.7 does not automatically apply to all pretrial activities in all circumstances; and we cannot find

substantial evidence in this record to support the Dyers' categorical disqualification from all further pretrial representation of the Firm.

Notably, defendants do not attempt to justify the categorical nature of the pretrial disqualification under Rule 3.7. They only argue that Rule 3.7 supported the trial court's disqualification of the Dyers "during trial, at depositions, and during pre-trial activities *which carry the risk of revealing the attorney[s'] dual role[s] to the jury*." (Italics added.) As to the decision to disqualify the Dyers for *all* purposes, defendants argue we should affirm on another ground: to prevent the Dyers' "potential misuse of confidential information learned … during their representation of the Sam-Sins in the prior matter." This argument comes completely out of left field. Nelson presented the trial court with no argument or evidence regarding this new purported ethical concern; and the trial court's order did not rest on this ground. We therefore decline to address it here on appeal in the first instance.

The cases defendants cite show that the potential for misuse of confidential information can indeed provide a proper basis for disqualifying an attorney for all purposes (including all pretrial activities); but it is a ground that stands separate and apart from Rule 3.7's advocate-witness rule, and in each cited case either the movant specifically sought or the trial court specifically ordered disqualification based on the disqualified attorney's acquisition of the movant's confidential information. (See *Yim*, *supra*, 55 Cal.App.5th at pp. 579–580, 586, 588–590 [affirming disqualification from all pretrial activities on the "independent ground" addressed by the trial court that the attorney acquired confidential information about the movant through her 17-year prior marriage to him]; *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1202, 1205, 1208 [affirming categorical disqualification in part based on movant's declaration that law firm acquired her confidential information in prior representation, before separately addressing

advocate-witness concerns].)[14]  In this case, no defendant sought the Dyers'
disqualification on this independent basis, nor was it ever mentioned by the trial court.[15]

Defendants' remaining arguments do not persuade us that categorical pretrial
disqualification was justifiable under Rule 3.7.  Defendants emphasize the Dyers'
anticipated service in "four separate and distinct roles":  as prosecuting attorneys,
percipient witnesses, expert witnesses, and supposed plaintiffs.  Although, once again, the
Dyers are *not* plaintiffs, we acknowledge they are the agents and officers of the plaintiff
(the Firm); and the Dyers' intent to play multiple roles at trial provides sound reasons to
disqualify them from serving as counsel at trial.  However, defendants offer no reason
why the Dyers' number of anticipated trial roles should preclude them from all pretrial
work.

Accordingly, we reverse the trial court's order insofar as it disqualifies the Dyers
from representing the Firm in all pretrial activities; and we remand with instructions for
the trial court to enter a new order disqualifying the Dyers from representing the Firm at
trial and from representing the Firm in any pretrial activities which carry the risk of
revealing either attorney's dual role to the jury.  Such an order will, at minimum,
disqualify the Dyers from taking and defending future depositions and from representing
the Firm at future evidentiary hearings.  The trial court shall retain discretion to, on
defendants' motion or on its own motion, disqualify the Dyers from other specific pretrial

---

[14]    We also note that both *Yim* and *Kennedy* presented far more closely entangled and
personal relationships between the movants and the targeted attorneys than simply former-
client/former-attorney as here.  (See *Yim*, *supra*, 55 Cal.App.5th at pp. 576–577, 589
[disqualified attorney was the movant's former spouse, representing her daughter bringing civil
sexual abuse allegations against the movant]; *Kennedy v. Eldridge*, *supra*, 201 Cal.App.4th at
pp. 1200–1202 [custody dispute in which disqualified attorney was the child's grandfather, the
defendant's father, and had obtained the moving plaintiff mother's confidential information
through prior work].)

[15]    Because we decline to address this argument, we deny the Firm's April 11, 2023 request
for judicial notice of a portion of a deposition transcript offered in reply to defendants' argument.

27.

litigation activities based on findings that doing so will further the policies underlying Rule 3.7.  We do not reverse in full because, unlike in *Lopez*, *supra*, 81 Cal.App.5th 412, there was no abuse of discretion in disqualifying the Dyers from representing the Firm at trial.

## DISPOSITION

The order of the trial court is affirmed in part and reversed in part.  We affirm the order insofar as it disqualified the Dyers from representing the Firm at trial in this matter.  We reverse the order insofar as it disqualified the Dyers from representing the Firm in all pretrial litigation activities.  We remand with instructions for the trial court to enter a new order disqualifying the Dyers from representing the Firm at trial and from representing the Firm in any pretrial activities which carry the risk of revealing either attorney's dual advocate-witness role to the jury.  The parties shall bear their own costs on appeal.


HILL, P. J.

WE CONCUR:


LEVY, J.


FRANSON, J.

28.